**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 1 5 2014
DATE



FOR CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on May 15, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 85410-6 |
| Respondent, | |
| v. | EN BANC |
| ERICK DESHUM JORDAN, | |
| Petitioner. | Filed  **MAY 1 5 2014** |

STEPHENS, J.—Erick Jordan asks this court to reverse a Court of Appeals decision affirming his convictions and sentence for second degree murder with a firearm enhancement and first degree unlawful possession of a firearm. At issue is whether differences between self-defense standards in Washington and Texas bar a sentencing court from finding that manslaughter convictions in these states are legally comparable. We hold they do not and affirm the lower court.

## FACTS AND PROCEDURAL HISTORY

On July 13, 2007, Jordan fatally shot Maurice Jackson in front of two civilian witnesses and two police officers. Report of Proceedings (RP) (June 10, 2008) at 35-37; Clerk's Papers (CP) at 11. He fled from the scene but was

apprehended sometime later when he broke into the home of an elderly woman in order to escape from the police. 10 Verbatim Report of Proceedings (VRP) (June 18, 2008) at 86, 97, 102, 105-06. When apprehended, Jordan was still carrying the .38 caliber revolver he used to kill Jackson. RP (June 16, 2008) at 88; 12 RP (June 23, 2008) at 344. The State charged Jordan with murder in the second degree with a firearm enhancement as well as unlawful possession of a firearm in the second degree. CP at 11-13. A jury found him guilty of both charges. CP at 14-16.

At sentencing, the State proved that Jordan had previously been convicted of voluntary manslaughter in Texas in 1992. RP Sentencing (Jan. 16, 2009) at 15-17, 19. Jordan, however, objected to the inclusion of the Texas conviction in his offender score, arguing that his prior Texas offense was not legally comparable to *any* Washington offense because Washington and Texas have different standards for self-defense. *Id.* at 8. The trial court rejected this argument, finding voluntary manslaughter in Texas to be legally comparable to second degree murder in Washington. *Id.* at 19-20. Inclusion of the Texas conviction increased Jordan's offender score to eight,[1] and the trial court sentenced him accordingly to a standard-range sentence of 417 months. CP at 155, 169-72. Jordan appealed his sentence, arguing, inter alia, that his Texas conviction was not legally comparable

---

[1] In calculating Jordan's offender score, the trial court misassigned the Texas conviction two points, rather than the statutorily prescribed three points under the Sentencing Reform Act of 1981, chapter 9.94A RCW. Suppl. Br. of Resp't at 5 n.3. Because we affirm the Court of Appeals, we need not consider the State's request that Jordan's offender score be recalculated at resentencing. *Id.*

to any Washington offense and that its inclusion in his offender score calculation violated his due process rights. Br. of Appellant at 13-29.

The Court of Appeals agreed with Jordan that his Texas conviction for voluntary manslaughter was not comparable to Washington's second degree murder because a person could be convicted of voluntary manslaughter in Texas without intentionally causing the death—a necessary element of second degree murder in Washington. *State v. Jordan*, No. 63016-4-I, slip op. (unpublished portion) at 7 (Wash. Ct. App. Nov. 1, 2010). The court, nonetheless, upheld the trial court's offender score calculation because voluntary manslaughter in Texas is legally comparable to first degree manslaughter in Washington, which scores the same points as second degree murder under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *Id.* at 9 n.33 (unpublished portion). Jordan petitioned this court for review, insisting the Court of Appeals' comparability analysis was flawed because it failed to appreciate the differences between self-defense in Washington and Texas. According to Jordan, a Texas offense is never comparable to any Washington offense under RCW 9.94A.525 because Washington's self-defense laws excuse a broader range of otherwise criminal conduct. Jordan does not dispute the Court of Appeals' analysis otherwise. We granted review. *State v. Jordan*, 176 Wn.2d 1023, 301 P.3d 1047 (2013).

ANALYSIS

Questions regarding the comparability of offenses present issues of law that we review de novo. *See State v. Stockwell*, 159 Wn.2d 394, 397, 150 P.3d 82

-3-

(2007). Under the SRA, the standard sentencing range for an offense is determined by cross-referencing a defendant's offender score with the offense's seriousness level on the sentencing grid provided under RCW 9.94A.510. While the seriousness level of a particular crime is predefined under RCW 9.94A.515, a defendant's offender score is not. It is individual specific and "estimates the dangerousness and overall culpability of the defendant." *State v. Wiley*, 124 Wn.2d 679, 683, 880 P.2d 983 (1994). Its calculation depends on the seriousness of the present offense and the defendant's criminal history, including his out-of-state convictions. RCW 9.94A.525.[2]

### *Due Process Does Not Require Comparability of Defenses*

When considering out-of-state convictions, the SRA provides that "[o]ut-of-state convictions for offenses shall be classified according to the *comparable* offense definitions and sentences provided by Washington law." RCW 9.94A.525(3) (emphasis added). We have interpreted this language to require "substantial[] similar[ity]" between the elements of the foreign offense and the Washington offense. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005); *see State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007); *State v. Sublett*, 176 Wn.2d 58, 87, 292 P.3d 715 (2012) (lead opinion). If the elements of the foreign offense are comparable to those of a Washington offense,

---

[2] Although RCW 9.94A.525 has been amended five times since Jordan committed the present offense, the relevant language remains the same. *See* LAWS OF 2013, 2d Spec. Sess., ch. 35, § 8; LAWS OF 2011, ch. 166, § 3; LAWS OF 2010, ch. 274, § 403; LAWS OF 2007, ch. 199, § 8. All references to RCW 9.94A.525 herein are to the current statute.

then "the inquiry ends" and the foreign crime counts toward the offender score as if it were the comparable Washington crime. *Sublett*, 176 Wn.2d at 87 (lead opinion); *see also Lavery*, 154 Wn.2d at 255. Jordan argues that due process requires parity not only between elements but also available defenses. Suppl. Br. of Pet'r at 8. Jordan points out that his argument is consistent with our suggestion in other cases that the SRA requires comparability of elements *and* defenses. *See State v. Stockwell*, 159 Wn.2d 394, 397, 150 P.3d 82 (2007); *Lavery*, 154 Wn.2d at 256. While we may have intimated this interpretation of the SRA framework in past cases, we have never said it is required as a matter of due process. Nor do we believe that it is.

The due process clause of the Fourteenth Amendment guarantees that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Our state constitution similarly guarantees that "[n]o person shall be deprived of life, liberty, or property, without due process of law." CONST. art. I, § 3. Although the language of article I, section 3 is not identical to that of the Fourteenth Amendment, we have treated our state due process clause coextensively with its federal counterpart, and Jordan does not offer an analysis under *State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986), to suggest different treatment applies in this case.

Well-settled precedent recognizes that the sentencing process is "less exacting than the process of establishing guilt." *Nichols v. United States*, 511 U.S. 738, 747, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994). Minimal due process

-5-

prohibits the State from sentencing a person convicted of a crime "on the basis of information which is false, lacks a minimum indicia of reliability, or is unsupported in the record," but it does not require strict proportionality between a crime and its punishment. *State v. Ford*, 137 Wn.2d 472, 481, 973 P.2d 452 (1999); *see Harmelin v. Michigan*, 501 U.S. 957, 962-65, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991); *Patterson v. New York*, 432 U.S. 197, 211-12 n.13, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *State v. Korum*, 157 Wn.2d 614, 640-41, 141 P.3d 13 (2006). Under the due process clause, a sentencing judge "'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *Nichols*, 511 U.S. at 747-48 (quoting *United States v. Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972)). Thus, prior to *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the United States Supreme Court has upheld sentencing enhancements based on a defendant's criminal history even when such conduct did not result in a conviction. *Nichols*, 511 U.S. at 747 (citing *Williams v. New York*, 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949); *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986)).

In *Blakely*, however, the Court held that the Sixth Amendment's right to a jury trial (as incorporated into the Fourteenth Amendment and hence applicable to the states), coupled with the Fourteenth Amendment's due process requirement of proof beyond a reasonable doubt, provides a constitutional limit on the facts that a sentencing court can use to support a sentence above a statutorily mandated range.

542 U.S. 296. Because inclusion of his Texas conviction in his offender score affected the maximum possible sentence the sentencing court was authorized to enter, we interpret Jordan's due process clause argument as an application of those protections. This argument, however, is not persuasive.

The United States Supreme Court has repeatedly stated that *Blakely*'s constitutional protections do not apply to "'the fact of a prior conviction,'" *Id.* at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). Only where the *exact facts* of a prior offense is used to increase the statutory maximum sentence a sentencing judge is authorized to enter does *Blakely*-type due process clause protections apply to limit judicial inquiry into the underlying circumstances of the prior conviction. *See Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013); *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005).

In this case, we do not have a debate about either the existence of the prior conviction or the facts of the underlying conviction. Instead, only the *effect* of the prior conviction is at issue. The parties disagree about whether a particular Texas conviction, with particular elements, and specific jury instructions (which are part of our record) is legally "comparable," in the language of RCW 9.94A.525(3), to any Washington conviction. This is a debate about a question of law, not fact. *Blakely*'s limit on the *facts* that a judge can use to raise the statutory maximum is therefore inapplicable here. Whether the Court of Appeals' comparability analysis

in this case complied with the statutory requirements of the SRA is a matter of statutory interpretation, not due process.

### RCW 9.94A.525(3) Does Not Require Comparability of Self-Defense Laws

When interpreting the meaning of statutes, "'[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent.'" *State v. Pannell*, 173 Wn.2d 222, 226-27, 267 P.3d 349 (2011) (alteration in original) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)).

We have repeatedly recognized that the legislature purposefully created the SRA scheme broadly in order to "'ensure that defendants with equivalent prior convictions are treated "the same way, regardless of whether their prior convictions were incurred in Washington or elsewhere."'" *State v. Morley*, 134 Wn.2d 588, 602, 952 P.2d 167 (1998) (quoting *State v. Villegas*, 72 Wn. App. 34, 38-39, 863 P.2d 560 (1993) (quoting *State v. Weiand*, 66 Wn. App. 29, 34, 831 P.2d 749 (1992))). The SRA instructs that "[o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3). Once a sentencing judge determines the comparability of an offense, the judge tallies "points" reflecting the legislature's unfettered judgment about the relative severity of such prior convictions and rounds down the sum "to the nearest whole number." RCW 9.94A.525(7)-(21). As illustrated under the SRA, crimes as diverse as premeditated murder and attempted kidnapping count the same number of points. RCW 9.94A.525(4) (scoring anticipatory offenses as completed offenses), (9)

(assigning three points for any serious violent offense), .030(45) (defining "serious violent offense"). And, convictions for attempt crimes are scored as if they were completed offenses. RCW 9.94A.525(4). The SRA even provides that if the sentencing court is unable to find a "clearly comparable offense" for a federal felony, "the offense shall be scored as a class C felony equivalent." RCW 9.94A.525(3).

Given the legislature's broad purpose and the SRA's loose point assignment, we have interpreted the SRA as requiring rough comparability—not precision—among offenses. *See Stockwell*, 159 Wn.2d at 397 (noting "comparability analysis is not an exact science"). Accordingly, we have declined to interpret the SRA to require judges to "conduct the tedious task of comparing out-of-state criminal procedures to in-state procedures" as part of its comparability analysis, reasoning that such interpretation would be "clearly contrary to the purposes of the SRA." *Morley*, 134 Wn.2d at 596-98. Moreover, we noted that such interpretation would defeat the SRA framework because it "would exclude every out-of-state conviction from a defendant's criminal history." *Id.* Instead, we have consistently confirmed that legal comparability is satisfied when the elements of the foreign offense are comparable to those of a Washington offense. *Sublett*, 176 Wn.2d at 87 (lead opinion); *Thiefault*, 160 Wn.2d at 415; *Lavery*, 154 Wn.2d at 255-56.

We recognize that in Washington, absence of self-defense has been considered an "element" of the crime. *State v. McCullum*, 98 Wn.2d 484, 493-94, 656 P.2d 1064 (1983) ("Once the issue of self-defense is properly raised," then

-9-

negating it becomes an actual element: "the absence of self-defense becomes another element of the offense which the State must prove beyond a reasonable doubt."); *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997). But whether the failure of a court or jury to find the absence of self-defense in convicting a defendant on a foreign offense renders that conviction categorically not comparable to a Washington offense is not a question we must consider in this case. Here, the documents from the Texas conviction (which the State filed with the Washington court at sentencing) show that the Texas jury was instructed on self-defense and told that the State had the burden to disprove it. CP at 55. And, the jury convicted Jordan anyway. CP at 56. While Washington and Texas law may vary on when a defendant's conduct is excused as a matter of self-defense—such as when a defendant can take advantage of a "stand your ground" type of law—the SRA does not require exactitude, only "comparability." *Lavery*, 154 Wn.2d at 255. And we find Texas' self-defense law, as articulated in the jury instruction, sufficiently comparable to that of Washington.

Requiring sentencing courts to consider the nuances of out-of-state self-defense laws is not only unnecessary under the SRA's comparability analysis, but it would also have far-reaching effects. Consider the possible nuances of self-defense. Unlike Washington, some 19 states still impose a common-law duty to retreat as a condition of claiming self-defense outside the home. *See* Eugene Volokh, *Duty to Retreat and Stand Your Ground: Counting the States*, THE VOLOKH CONSPIRACY (July 17, 2013, 10:11 AM), http://www.volokh.com/

2013/07/17/duty-to-retreat/. Convictions for murder, manslaughter, and assault from these states, including New York, Massachusetts, Pennsylvania, and Nebraska, among 13 others, would fail the legal comparability test under Jordan's rule. *Id.* Even for those states that do not require a duty to retreat, the scope of the so-called "castle doctrine" varies from state to state, as does the extent to which a defendant may claim self-defense on behalf of a third person. If the SRA required courts to compare self-defense laws from foreign states for exact equality, many otherwise comparable convictions for serious violent offenses will go uncounted, notwithstanding that the legislature "obviously intended out-of-state convictions to be considered" as part of a defendant's offender score. *Morley*, 134 Wn.2d at 597-98.

Subjecting diverse out-of-state self-defense laws to the SRA comparability analysis would also create the "minitrials over prior convictions" we have consistently rejected. *Wiley*, 124 Wn.2d at 686; *State v. Irish*, 173 Wn.2d 787, 790, 272 P.3d 207 (2012) (declining to "turn the current sentencing proceeding into an appellate review of all of the defendant's prior convictions" (citing *State v. Ammons*, 105 Wn.2d 175, 188, 713 P.2d 719, 718 P.2d 796 (1986))). And, construing the SRA as requiring analysis of the context of self-defense laws would likely generate a tidal wave of claims for postconviction relief. *See Morley*, 134 Wn.2d at 598 (noting that such a holding "would apply retroactively to the date the SRA was enacted," and that "every single prisoner with out-of-state prior convictions" could attack his or her sentence (citing *In re Pers. Restraint of*

*Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997))). This would flout the legislature's intent in creating a rough comparability scheme under the SRA.

## CONCLUSION

Jordan's Texas manslaughter conviction was properly counted in his criminal history under the SRA. We adhere to our long-standing interpretation of the SRA as not requiring exact comparability and hold that a court need not analyze divergent self-defense laws as part of its comparability analysis. Nor does due process impose such a requirement. Because Jordan's sentence was consistent with both the SRA and constitutional minimums, we affirm the Court of Appeals.

_____
Stephens, J.

WE CONCUR:

_____
Madsen, C.J.

_____
Johnson, J.

_____
Owens, J.

_____
Fairhurst, J.

_____
J.M. Johnson, J. P.T.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.