# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50653-0-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| QUINN ROBINETT, | |
| Appellant. | |

BJORGEN, J. — Quinn Robinett appeals from community custody conditions and legal financial obligations (LFOs) imposed as part of his sentence following his guilty pleas to attempted second degree child molestation and third degree child molestation.  Robinett contends that the community custody condition prohibiting him from forming relationships with individuals who have care or custody of minor children without prior authorization is unconstitutionally vague and that the sentencing court lacked statutory authority to impose the condition.  Robinett also contends that the sentencing court lacked statutory authority to impose the condition requiring approval before having overnight guests in his residence and before staying overnight at places other than his residence.  Additionally, Robinett contends that recent amendments to the LFO statutes and our Supreme Court's recent decision in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), require that we remand for the trial court to strike a $200 criminal filing fee.

We affirm in part, reverse in part, and remand with instructions to strike or modify the community custody condition prohibiting forming relationships with certain individuals without prior authorization and to strike the $200 criminal filing fee.

FACTS

On June 5, 2017, the State charged Robinett by amended information with first degree child rape, two counts of third degree child rape, two counts of first degree child molestation, and attempted second degree child molestation. Robinett later entered an *Alford*[1] plea of guilty to attempted second degree child molestation and third degree child molestation. As part of his plea, Robinett agreed that the trial court could review police reports and statements of probable cause to establish a factual basis for his guilty pleas. The statements of probable cause stated the following:

> On 05-02-16 victim ARR[2] DOB [date of birth] 11-05-98 was interviewed by a forensic child interviewer with the Kitsap County Sexual Assault Unit. During the interview, ARR disclosed when she was 9 YOA [years of age], her father Quinn Robinett got under the covers with her. While under the covers, Quinn placed his hand up her shirt rubbing her back and stomach. Quinn tried to place his hand up her bra, but stopped when ARR told him no. ARR said during another incident, Quinn and her were in the same bed together. Quinn was lying behind ARR, she was on her side facing away from Quinn and she could feel his erect penis against her butt.
>
> . . . .

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] We refer to A.R.R., R.K.R., and M.J.R. by their initials. *See* General Orders of Division II, 2011-1 *In Re the Use of Initials or Pseudonyms For Child Witness in Sex Crimes*.

On 05-02-16 victim RKR DOB 09-18-2002 was interviewed by a forensic child interviewer with the Kitsap County Sexual Assault Unit. During the interview, RKR said when she was 9 YOA, her father Quinn got into bed with her. Quinn put his hand down her pants and rubbe[d] her private parts on her bare skin. RKR said when she was 10 YOA, Quinn was lying behind her in bed and she could feel his private against her butt. She described his private as sticking out.

. . . .

On 05-02-16 victim MJR DOB 11-04-2001 was interviewed by a forensic child interviewer with the Kitsap County Sexual Assault Unit. During the interview, MJR said shortly before she turned 14 YOA, Quinn pulled down her pants and placed his penis partway into her vagina. MJR said during this she said "OWE". Quinn removed his penis, but continued touching her vagina with his hand. MJR said that since she was 3 YOA, she recalled Quinn touching her vagina and placing his finger inside her vagina.

Clerk's Papers (CP) at 7-10. The trial court accepted Robinett's guilty pleas, finding that

Robinett was knowingly, intelligently, and voluntarily pleading guilty to the charges and that the

statements of probable cause established a factual basis for his pleas.

At sentencing, the trial court imposed several community custody conditions, including

the following conditions to which Robinett objected:

17. Shall have prior approval for all residential and employment situations, including overnight guests at his approved residence and overnight stays at places other than his approved residence subject to review after completion of psychosexual eval[uation].

. . . .

20. Shall not form relationships with individuals who have care or custody of minor children without authorization from the CCO [(community corrections officer)] and/or therapist.

CP at 94. The trial court also imposed LFOs that included a $200 criminal filing fee. Robinett

appeals from the imposition of the above community custody conditions and the $200 criminal

filing fee.

ANALYSIS

I. STATUTORY AUTHORITY TO IMPOSE COMMUNITY CUSTODY CONDITIONS

Robinett first contends that the trial court lacked statutory authority to impose the community custody conditions requiring prior approval (1) before forming relationships with individuals who have care or custody of minor children and (2) before having overnight guests at his approved residence or staying overnight at places other than his approved residence. We disagree.

"A trial court's sentencing authority is limited to that granted by statute." *State v. Button*, 184 Wn. App. 442, 446, 339 P.3d 182 (2014). Former RCW 9.94A.703(3)(f) (2015) grants trial courts the discretionary authority to impose "crime-related prohibitions" as a condition of community custody. Former RCW 9.94A.030(10) (2015) defined "crime-related prohibition" as:

> [A]n order of court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted, and shall not be construed to mean orders directing an offender affirmatively to participate in rehabilitative programs or to otherwise perform affirmative conduct. However, affirmative acts necessary to monitor compliance with the order of a court may be required by the department.

We review the imposition of a crime-related prohibition for an abuse of discretion. *State v. Nguyen*, 191 Wn.2d 671, 425 P.3d 847 (2018); *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Regarding our standard of review from the imposition of crime-related prohibitions, our Supreme Court recently noted:

> While it is true the prohibited conduct must directly relate to the circumstances of the crime, "[t]his court reviews sentencing conditions for abuse of discretion. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Such conditions are usually upheld if reasonably crime related. *Id.* at 36-37"; *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). A court does not abuse its discretion if a "reasonable relationship" between the crime of conviction and the community custody condition exists. *State v. Irwin*, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015). The prohibited conduct need not be identical to the crime of conviction, but there must be "some basis for the connection." *Id.* at 657.

4

*Nguyen*, 191 Wn.2d at 683-84. In applying this standard, the *Nguyen* court held that a condition prohibiting an offender from possessing or viewing sexually explicit material was reasonably related to his crime of child rape and molestation, reasoning:

> Nguyen committed sex crimes and, in doing so, established his inability to control his sexual urges. It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing "sexually explicit materials," the only purpose of which is to invoke sexual stimulation.

191 Wn.2d at 686.

The *Nguyen* court similarly held that a condition prohibiting an offender from entering any sex-related business was reasonably related to her crimes of second degree child molestation despite "nothing in the record suggest[ing] that [the offender] met her victim in a 'sex-related business' or that her presence in such a business played a role in her crimes." 191 Wn.2d at 687. In upholding this condition, our Supreme Court again relied on the offender's inability to control her sexual urges, noting that "it is reasonable to conclude that Norris will struggle to rehabilitate from her sexual deviance so long as she frequents 'sex-related businesses.'" *Nguyen*, 191 Wn.2d at 687. With *Nguyen* setting forth the standard for determining whether a reasonable relationship exists between a crime-related probation and the crime of conviction, we turn to the conditions at issue in this case.

A.     Overnight Guests/Overnight Stays at Places Other than Approved Residence

Robinett's community custody condition 17 requires that he "[s]hall have prior approval for all residential and employment situations, including overnight guests at his approved residence and overnight stays at places other than his approved residence subject to review after completion of psychosexual eval[uation]." CP at 94. Robinett challenges the portion of this condition requiring prior approval before having an overnight guest at his approved residence

5

and before staying overnight at a place other than his residence.  Robinett argues that this condition is not related to his crime because he did not commit his offenses against an overnight guest in his home or while staying overnight at a place other than his home.  We disagree.

The facts underlying Robinett's guilty plea convictions as set forth in the statement of probable cause establish that he committed multiple offenses against at least two of his three minor victims while the victims were in their beds.  Although Robinett committed his offenses against his daughters in the family home and not against overnight guests or while staying overnight at a place other than the family home, our Supreme Court has made clear that there need not be a direct causal link between the prohibited conduct and the offender's crime "[s]o long as it is reasonable to conclude that there is a sufficient connection between the prohibition and the crime of conviction."  *Nguyen*, 191 Wn.2d at 685-86.  In light of the fact that Robinett committed his offenses against victims while the victims were lying in their beds, it was reasonable for the trial court to conclude that he should be prohibited from having overnight guests or staying overnight at places other than his approved residence without prior approval.  Accordingly, we hold that the trial court did not abuse its discretion in imposing this condition.[3]

---

[3] We hold in this opinion that under *Nguyen* the condition challenged in Part A is statutorily authorized by former RCW 9.94A.703(3)(f).  As guidance, we note that the challenged condition would likely not be authorized by RCW 9.94A.704(3)(b) and (c), as the State also argues.  Those provisions state, "If the offender is supervised by the department, the department shall at a minimum instruct the offender to: . . . (b) Remain within prescribed geographical boundaries; (c) Notify the community corrections officer of any change in the offender's address or employment."  It does not appear that these provisions would apply to a prohibition on overnight guests, since that condition is unrelated to a geographical boundary or change in address.  Similarly, a prohibition on staying overnight at places other than the offender's residence does not appear to relate to a change in address or prescribed geographical boundary.

B.      Relationships

Robinett's community custody condition 20 states that he "[s]hall not form relationships with individuals who have care or custody of minor children without authorization from the CCO and/or therapist." CP at 94. Robinett asserts that this condition is not related to his crimes because he did not commit the crimes against children whom he had accessed by forming social relationships with their parents. We disagree and hold that, under our Supreme Court's analysis in *Nguyen*, the condition is sufficiently related to his crimes of conviction. As in *Nguyen*, Robinett's sex crime convictions demonstrate his inability to control his sexual urges around minor children. As such, it was reasonable for the trial court to conclude that Robinett "will struggle to rehabilitate from [his] sexual deviance" if permitted to form relationships with people who may provide him with access to their minor children absent prior approval. *Nguyen*, 191 Wn.2d at 687. Accordingly, we reject Robinett's challenge to this condition on this ground. This does not end our inquiry however, as Robinett also challenges this condition as unconstitutionally vague.

## II. VAGUENESS

Robinett contends that the condition prohibiting him from forming relationships with individuals who have care or custody of minor children without prior authorization is unconstitutionally vague. We agree that the condition as written is unconstitutionally vague.

Due process under the Fourteenth Amendment of the United States Constitution and article I, section 3 of the Washington State Constitution requires that sentencing conditions provide "fair warning of proscribed conduct." *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008).[4] A sentencing condition is unconstitutionally vague if it "'does not define the criminal

offense with sufficient definiteness that ordinary people can understand what conduct is proscribed'" or if it "'does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Bahl*, 164 Wn.2d at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

In *United States v. Reeves*, 591 F.3d 77, 80-81 (2d Cir. 2010), the Second Circuit of the United States Court of Appeals held that a condition requiring the offender to notify the probation department "when he establishes a significant romantic relationship" was unduly vague, reasoning:

> We easily conclude that people of common intelligence (or, for that matter, of high intelligence) would find it impossible to agree on the proper application of a release condition triggered by entry into a "significant romantic relationship." What makes a relationship "romantic," let alone "significant" in its romantic depth, can be the subject of endless debate that varies across generations, regions, and genders. For some, it would involve the exchange of gifts such as flowers or chocolates; for others, it would depend on acts of physical intimacy; and for still others, all of these elements could be present yet the relationship, without a promise of exclusivity, would not be "significant." The history of romance is replete with precisely these blurred lines and misunderstandings. *See, e.g.*, Wolfgang Amadeus Mozart, *The Marriage of Figaro* (1786); Jane Austen, *Mansfield Park* (Thomas Egerton, 1814); *When Harry Met Sally* (Columbia Pictures 1989); *He's Just Not That Into You* (Flower Films 2009).

We agree with the reasoning in *Reeves*. Although Robinett's condition prohibiting him from "forming relationships" with certain individuals absent prior approval lacks the qualifiers identified as problematic in *Reeves*, the lack of these or any qualifiers to the term "relationship" subjects the prohibitive condition to the same sort of varied and inconsistent interpretations, rendering it unconstitutionally vague.

---

[4] Our Supreme Court has "treated our state due process clause coextensively with its federal counterpart." *State v. Jordan*, 180 Wn.2d 456, 462, 325 P.3d 181 (2014); *see also Bellevue Sch. Dist. v. E.S.*, 171 Wn.2d 695, 710-14, 257 P.3d 570 (2011); *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 394, 20 P.3d 907 (2001).

In *Nguyen*, our Supreme Court recognized the definition of "relationship" as "'a state of affairs existing between those having relations.'" *Nguyen*, 191 Wn.2d at 682 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 576 (2002)). As Robinett argues in his brief, the broad definition of "relationship" could encompass any recurring interactions with a business associate, co-worker, barista, attorney, doctor, or letter carrier. Br. of Appellant at 7. Unlike the term "dating relationship," which is statutorily defined in RCW 26.50.010(2) and was held by the *Nguyen* court to be sufficiently definite to withstand a vagueness challenge, people of ordinary intelligence, including corrections officers charged with enforcing this condition, could reasonably disagree as to when a person forms a relationship with another.

Therefore, the condition lacks the definiteness needed to allow ordinary people to understand what conduct is proscribed, and it permits arbitrary enforcement by granting corrections officers broad discretion to determine when an encounter between Robinett and another individual has crossed the obscure threshold of forming a relationship. Accordingly, we hold that this community custody condition relating to forming relationships is unconstitutionally vague, and we remand with instructions to strike the condition as written or to modify it to avoid unconstitutional vagueness.

### III. LFOs

Next, Robinett contends that we must remand to the trial court to strike the $200 criminal filing fee under recent amendments to the LFO statutes and *Ramirez*, 191 Wn.2d 732. The State concedes that remand is required to strike the $200 criminal filing fee. We accept the State's concession regarding the $200 filing fee and direct the trial court to strike this fee on remand.

The legislature recently amended former RCW 36.18.020(2)(h) (2017), and as of June 7, 2018, trial courts are prohibited from imposing the $200 criminal filing fee on defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 17; *Ramirez*, 191 Wn.2d 739. Our Supreme Court has held that the amendment applies prospectively and is applicable to cases pending on direct review and not final when the amendment was enacted. *Ramirez*, 191 Wn.2d at 748. Because Robinett was indigent at the time of sentencing and because amendments to former RCW 36.18.020 apply to Robinett's sentence under *Ramirez*, we remand with direction to strike the $200 criminal filing fee from his sentence.

In summary, we affirm the community custody condition requiring Robinett to obtain prior approval for overnight guests at his approved residence and to stay overnight at places other than his approved residence, and we remand with instructions to (1) strike the "forming relationships" community custody condition as written or modify it to avoid unconstitutional vagueness and (2) strike the $200 criminal filing fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Johanson, P.J.

Sutton, J.