# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>BRANDON JEROME ROBINSON,<br><br>Appellant. | No. 85428-3-I<br><br>ORDER WITHDRAWING AND SUBSTITUTING OPINION |

The court has determined that the opinion filed on October 20, 2025 should be withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the opinion filed on October 20, 2025 is withdrawn; and it is further

ORDERED that a substitute unpublished opinion shall be filed.

_Feldman, J._

_Coburn, J._

_Mann, J._

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85428-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| BRANDON JEROME ROBINSON, | UNPUBLISHED OPINION |
| Appellant. | |

FELDMAN, J. — Brandon Jerome Robinson appeals his convictions and sentence for rape in the second degree and burglary in the first degree. He argues (1) the trial court abused its discretion by admitting under the res gestae doctrine evidence regarding his conduct in the hours prior to M.R.'s rape, (2) his conviction for aggravated assault in Pennsylvania was improperly included in his offender score at sentencing, (3) the community custody condition concerning geographic boundaries imposed by the trial court at sentencing was unconstitutionally vague, and (4) remand is necessary to strike the victim penalty assessment (VPA) and DNA collection fee from his judgment and sentence. We remand to strike the VPA and DNA collection fee. In all other respects, we affirm.

I

M.R. awoke around 5 a.m. on January 24, 2021 to a man raping her in her bedroom of her sorority house one block off the University of Washington campus. Upon waking, she pushed the man off of her and he fled, leaving behind a pair of black boots. M.R. called the police, who collected the boots, and she went to the hospital for a sexual assault examination. While M.R. was at the hospital, a man knocked on the door of her house seeking boots he left there. M.R.'s roommate took a picture of the man and furnished it to police. Police used that photo in a department-wide bulletin seeking the suspect who raped M.R.

A police officer recognized the man in the photo as Brandon Robinson, who he had encountered the same morning M.R. was raped. Around 2 a.m. that morning, some college students who lived near M.R. called police because they saw someone looking into their first floor apartment kitchen window and were frightened. Arriving officers saw someone, later identified as Robinson, leaning into an open bedroom window of a different apartment nearby. Robinson insisted that he knew the female occupant. The woman stated she did not know Robinson. One of the officers told Robinson "[t]here's a thing called voyeurism . . . kind of like a peeping tom" and that if he wanted to "hang out" with someone he should maybe give the person a call or "just knock on the door like a normal person." Robinson left after officers asked him to leave. This interaction with Robinson enabled one of the responding officers to later recognize the person in the photo provided by M.R.'s roommate as Robinson, which led to Robinson's arrest. Later analysis of

DNA in the rape kit taken during M.R.'s sexual-assault examination revealed that Robinson's DNA was included.

Following a trial, a jury convicted Robinson of second-degree rape and first-degree burglary with sexual motivation. At sentencing, the trial court ruled Robinson's prior Pennsylvania offense of aggravated assault was comparable to the Washington crime of third-degree assault and included it in his offender score. The trial court imposed a standard-range sentence with community custody provisions upon release. It also imposed a VPA of $500 and a DNA collection fee of $100.

Robinson appeals.

II

A.    Res Gestae Evidence

Robinson argues the trial court abused its discretion by admitting evidence regarding his conduct in the hours prior to M.R.'s rape. We disagree.

The trial court admitted the challenged evidence, and denied Robinson's motion in limine to exclude it, because it concluded that evidence of Robinson's activities in the hours prior to M.R.'s rape falls squarely under the res gestate doctrine and is therefore admissible. We review that ruling for an abuse of discretion. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). A trial court abuses its discretion if "'no reasonable person would take the view adopted by the trial court.'" *State v. Jennings*, 199 Wn.2d 53, 59, 502 P.3d 1255 (2022) (quoting *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)).

A leading treatise in Washington describes "res gestae" evidence as including "evidence of misconduct that is close in time to the crime presently charged and directly relevant to proving the crime presently charged." 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 404.18, at 527 (6th ed. 2016). Such evidence "completes the story of the crime charged or provides immediate context for events close in both time and place to that crime." *State v. Sullivan*, 18 Wn. App. 2d 225, 237, 491 P.3d 176 (2021). It "depict[s] a complete picture for . . . the jury." *State v. Grier*, 168 Wn. App. 635, 647, 278 P.3d 225 (2012) (quoting *State v. Acosta*, 123 Wn. App. 424, 442, 98 P.3d 503 (2004)) (internal quotation marks omitted).

Our Supreme Court has admitted evidence under the res gestae doctrine in a variety of circumstances that are relevant here. In *State v. Brown*, 132 Wn.2d 529, 574, 940 P.2d 546 (1997), the court admitted a rape victim's testimony regarding a sexual assault to rebut a defendant's claims that a sexual assault of another victim was consensual where the two assaults were "markedly similar." In *State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981), the court admitted under the res gestae doctrine evidence of "uncharged crimes" in an "unbroken sequence of incidents . . . all of which were necessary to be placed before the jury in order that it have the entire story of what transpired on that particular evening." The court explained that "[e]ach offense was a piece in the mosaic necessarily admitted in order that a complete picture be depicted for the jury." *Id.*

Here, as in *Brown* and *Tharp*, the trial court admitted relevant evidence of Robinson's conduct prior to the rape that placed him near the time and place of

the rape (he was near M.R.'s house just a few hours prior to the rape) and also explained how police were able to identify him as the person in the photograph obtained by M.R.'s roommate, which connected Robinson to the location of the rape. The evidence completed the story of the crime charged and provided the immediate context for events close in both time and place to that crime. As in *Tharp*, it was "a piece in the mosaic necessarily admitted in order that a complete picture be depicted for the jury." *Id.* For these reasons, the evidence is properly considered res gestae evidence, and the trial court did not abuse its discretion in admitting it as such.

Robinson argues the trial court "needed to decide admissibility of res gestae evidence under the requirements of ER 404(b)" and abused its discretion by failing to conduct an ER 404(b) analysis, but his argument is not persuasive. The Tegland treatise, quoted above, explains, "[b]y time-honored tradition and case law," ER 404(b) does not apply to res gestae evidence because (1) "misconduct closely associated with the crime charged is simply not *prior* misconduct at all so ER 404(b) is out of the picture" and (2) res gestae evidence is "another exception to the general rule that prior misconduct is inadmissible." 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 404.18, at 527 (6th ed. 2016). The treatise concludes: "Either way, the evidence is admissible unless it is barred by some other rule." *Id.* at 50 (rev. ed. & Supp. 2025). Our court has likewise explained that "res gestae evidence more appropriately falls within ER 401's definition of relevant evidence, which is generally admissible under ER 402, rather than an exception to propensity evidence under ER 404(b)." *Sullivan*, 18 Wn. App. 2d at

236 (internal quotation marks omitted).[1]  Contrary to Robinson's argument, no ER 404(b) analysis is required for res gestae evidence, and thus none was required here.

Robinson also argues the res gestae doctrine should be abandoned in Washington.  As discussed above, our Supreme Court has repeatedly admitted evidence under the res gestae doctrine in a variety of circumstances that are relevant here.  As recently as 2022, the court held that evidence of uncharged sexual misconduct was properly admitted as res gestae to explain delayed reporting in a case alleging rape of a child.  *State v. Crossguns*, 199 Wn.2d 282, 296, 505 P.3d 529 (2022).  "We are bound by the decisions of our state Supreme Court and err when we fail to follow it."  *Buck Mountain Owner's Ass'n v. Prestwich*, 174 Wn. App. 702, 716, 308 P.3d 644 (2013).  Robinson's argument on this point thus fails.

B.    Comparability Analysis at Sentencing

Robinson next argues his conviction for aggravated assault in Pennsylvania was improperly included in his offender score at sentencing.  We again disagree.

Washington's Sentencing Reform Act (SRA) provides "[o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law" to calculate a defendant's offender score.  RCW 9.94A.525(3).  "Comparability of a prior out of state

---

[1] *See also Tharp*, 96 Wn.2d at 594-98 (distinguishing uncharged crimes that were properly admitted under res gestae while analyzing how trial court failed to conduct ER 404(b) balancing of necessity against prejudice in its admission of a prior conviction and furlough status from the Department of Institutions that had no direct connection with the crime charged).

conviction is reviewed de novo." *State v. Sublett*, 176 Wn.2d 58, 87, 292 P.3d 715 (2012). *Sublett* provides the two-part test for comparability:

> To determine whether a foreign offense is comparable to a Washington offense, we first consider if the elements of the foreign offense are substantially similar to the Washington counterpart. If so, the inquiry ends. If not, we determine whether the offenses are factually comparable, that is, whether the conduct underlying the foreign offense would have violated the comparable Washington statute.

*Id.* (citing *State v. Thiefault*, 160 Wn.2d 409, 414-15, 158 P.3d 580 (2007)). Here, as in *Sublett*, there is no adequate factual record of the Pennsylvania conviction so comparability must be determined based solely on the legal elements of the crime.[2]

In determining legal comparability, the elements of the two crimes need not be identical; instead, they must be "substantially similar." *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). As the court explained in *State v. Jordan*, 180 Wn.2d 456, 465, 325 P.3d 181 (2014), "Given the legislature's broad purpose and the SRA's loose point assignment, we have interpreted the SRA as requiring rough comparability—not precision—among offenses." Succinctly put, "comparability analysis is not an exact science." *State v. Stockwell*, 159 Wn.2d 394, 397, 150 P.3d 82 (2007).

Applying these legal principles here, the elements of the two offenses are sufficiently comparable. In Pennsylvania, "[a] person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such

---

[2] The appellate record contains the information and criminal complaint but no evidentiary basis to establish a factual comparison to Washington's third degree assault is provided, such as a stipulation or acknowledgement of guilt from Robinson as to any underlying facts.

injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury," in turn, means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. The Washington statute for assault in the third degree, in turn, provides, "A person is guilty of assault in the third degree if he or she . . . [w]ith criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering." RCW 9A.36.031(1)(f).

As can be seen from the text of the statutes, the crimes are "substantially similar" and "roughly comparable." Just as Washington requires assaultive conduct that "causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering," Pennsylvania requires conduct that causes "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. While not identical, these elements are "roughly comparable."

Furthermore, the mens rea elements of the two crimes are comparable. The Pennsylvania statute requires that the defendant act "intentionally, knowingly or recklessly." 18 Pa.C.S. § 2702(a)(1). The Washington statute requires "criminal negligence," RCW.9A.36.031(1)(f), and RCW 9A.08.010(2) defines that requirement as follows: "When a statute provides that criminal negligence suffices to establish an element of an offense, such element also is established if a person

acts intentionally, knowingly, or recklessly." RCW 9A.08.010(2). Thus, the mens rea elements are also legally comparable.

Robinson argues the statutes are not legally comparable because the Pennsylvania statute includes "attempt" and the Washington statute does not, but this argument also fails. In *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009), the court explained the term "assault" is "an element of the crime" of assault and is defined by common law to include "(1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm." Applying the second prong of this definition, the Washington assault statute, like the Pennsylvania statute, includes attempt. The trial court did not err when it included the Pennsylvania conviction in Robinson's offender score at sentencing.

C.    Community Custody Condition Concerning Geographic Boundaries

Robinson next argues the community custody condition concerning geographic boundaries imposed by the trial court at sentencing was unconstitutionally vague. That condition requires that Robinson "[r]emain within geographic boundaries, as set forth in writing by the Department of Correction Officer or as set forth with SODA [Stay Out of Drug Area] order." Our recent opinion in *State v. Lundstrom,* __ Wn. App. 2d __, 572 P.3d 1243, 1245-46 (2025), holds that an identical community custody condition imposing geographical boundaries, as mandated by RCW 9.94A.704(3)(b), is not unconstitutionally vague. Applying *Lundstrom* here, Robinson's contrary argument fails.

D.      VPA and DNA Collection Fee

Lastly, Robinson argues remand is necessary to strike the VPA and DNA collection fee from his judgment and sentence because the legislature amended the VPA statute to prohibit imposition of the VPA on indigent defendants as of July 1, 2023 and amended the DNA collection fee statute to allow waiver of the DNA collection fee upon motion of the offender also as of July 1, 2023.  Because Robinson has made a sufficient showing of indigency and the State does not oppose his request, we remand for the trial court to strike the VPA and DNA collection fee from Robinson's judgment and sentence.  *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) ("Although [the] amendment [to RCW 7.68.035] will take effect after Ellis's resentencing, it applies to Ellis because this case is on direct appeal.").

In all other respects, we affirm.

_____
Feldman, J.

WE CONCUR:

_____        _____
Coburn, J.                       Mann, J.