[No. 81072-9.   En Banc.]
Argued March 26, 2009.     Decided July 9, 2009.

THE STATE OF WASHINGTON, *Respondent*, v. ROGER DEAN ENGEL, *Petitioner*.

*Vanessa Mi-jo Lee* (of *Washington Appellate Project*), for petitioner.

*Daniel T. Satterberg, Prosecuting Attorney*, and *James M. Whisman, Deputy*, for respondent.

¶1 J.M. JOHNSON, J. — Roger Dean Engel stole some wheels from a large private yard that was partially enclosed by a fence and partially bordered by sloping terrain. Engel was convicted of burglary in the second degree, which requires entering or remaining in a "building." RCW 9A.52.030. A "building" is statutorily defined to include a "fenced area." RCW 9A.04.110(5). Engel challenges the sufficiency of the evidence, claiming the yard was not a "fenced area" in the sense intended by the legislature. We agree and reverse his conviction.

## FACTS AND PROCEDURAL HISTORY

¶2 Roger Engel was convicted of burglary in the second degree, a felony. RCW 9A.52.030. The charge arose out of the theft of aluminum auto wheels from the business premises of Western Asphalt. Western Asphalt is located in a rural, unincorporated area of King County consisting mostly of undeveloped acreage and farms. The business premises cover between seven and eight acres and include several buildings and a large yard. The entrance to the property is gated. The wheels taken were in the yard near a shed. The theft occurred at night when the business was closed and the front gate was locked. Security cameras did not prove how the thieves entered the yard.

¶3 One-third of the property is fenced by chain link fence with barbed wire on the top. This includes the front of the property (i.e., the side fronting the road), as well as a section of property between the front and piles of rock and gravel located "down a distance" from the front.[1] Verbatim

---

[1] The record does not reflect how far down "a distance" is.

Report of Proceedings (Mar. 21, 2006) at 118. The rest of the property is not fenced, including the edge of the property near the stock piles. Beyond the gravel piles there is a "pretty sizeable drop-off, a hill that goes down." *Id.* at 119. Two-thirds of the property is encased by similar terrain, including "banks, high banks, [and] sloping banks." *Id.* at 130.[2] These banks slope both up and down from the property.

¶4 Directly adjacent to Western Asphalt is its aggregate supplier, a separate business. The fence on the front of Western's property extends along the front of its supplier's property as well. No fence or gate separates the two properties. The two properties are connected by an internal service road.

¶5 The trial court instructed the jury that to find Engel guilty of burglary in the second degree, there must be proof beyond a reasonable doubt that he unlawfully entered or unlawfully remained in a building. The court also instructed that "[b]uilding, in addition to its ordinary meaning, includes any fenced area." Clerk's Papers (CP) at 20. The jury was also instructed that if they could not find Engel guilty of burglary in the second degree, they could consider whether he was guilty of the lesser included crime of criminal trespass in the second degree, a misdemeanor. CP at 24; *see* RCW 9A.52.080. The jury found Engel guilty of burglary in the second degree, and the trial court entered judgment. CP at 32-37.

¶6 Engel appealed, arguing that there was insufficient evidence that he unlawfully entered or unlawfully remained in a building or fenced area. The Court of Appeals affirmed in an unpublished decision. *State v. Engel*, noted at 141 Wn. App. 1006, 2007 WL 2985088, 2007 Wash. App. LEXIS 2828. Engel sought review with this court on the sufficiency of the evidence issue, which was granted.

---

[2] At trial a photograph was admitted into evidence that showed a high, sloping bank bordering the back of the work yard.

STANDARD OF REVIEW

■■ ¶7 This case is a challenge to the sufficiency of the evidence at trial. To determine whether the evidence is sufficient to sustain a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003). Interpretation of a statute is a question of law that we review de novo.[3] *Id.* at 346.

ANALYSIS

¶8 Washington's burglary statute provides that "[a] person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030. " 'Building,' in addition to its ordinary meaning, includes any . . . fenced area . . . ." RCW 9A.04.110(5). "Fenced area" is not defined in the criminal code.

¶9 In *State v. Roadhs*, 71 Wn.2d 705, 707-08, 430 P.2d 586 (1967), *superseded by statute as stated in Wentz*, 149 Wn.2d 342, burglars were apprehended in an area that was fully enclosed by building walls and a cyclone fence topped by barbed wire. The burglary statute in effect at the time applied to any dwelling house, building, or other structure containing certain kinds of property. *Wentz*, 149 Wn.2d at 348 (citing former RCW 9.19.020 (1909)). At the time, the definition of "building" did not include "fenced area." *Id.* (citing former RCW 9.01.010(18) (1909)). Thus, we declined to find that a fenced area was a "building" for purposes of

---

[3] The sufficiency of the evidence here turns on whether Western Asphalt's yard was a fenced area within the meaning of the burglary statute; if not, then as a matter of law no rational fact finder could find that the State proved the building element of the crime.

the burglary statute. *Id.* (citing *Roadhs*, 71 Wn.2d at 707-08). Instead, we found that the fenced area qualified as an "other structure." *Id.* at 349. Citing the maxim noscitur a sociis,[4] we reasoned that

> where the fence is of such a nature that it is erected mainly for the purpose of protecting property within its confines and is, in fact, an integral part of a closed compound, its function becomes analogous to that of a "building" and the fence itself constitutes a "structure" subject to being burglarized.

*Roadhs*, 71 Wn.2d at 708-09. This became the "*Roadhs* main purpose test" for determining whether a fenced area could support a burglary charge. *Wentz*, 149 Wn.2d at 350.

¶10 In 1975, the legislature enacted a new definition of "building" that, for the first time, explicitly included "fenced area." *Id. Wentz* was our first opportunity to apply the new definition in the context of the burglary statute. *Id.* at 348. Wentz had climbed a fence into the backyard of a residential home. *Id.* at 345. The fence was six feet tall, solid wood, and surrounded the backyard. *Id.* The fence had two gates, both of which were padlocked. *Id.* The police officer who apprehended Wentz had to climb the fence to enter the backyard. *Id.* at 345-46.

¶11 Although all nine justices agreed that the backyard in Wentz's case was a "fenced area," the court split over whether that term needed to be further defined. *Id.* at 353, 358. The majority began by dispensing with the *Roadhs* main purpose test as obsolete in light of the legislature's addition of "fenced area" to the definition of "building." *Id.* at 350. The majority then took a case-by-case approach and held the ordinary meaning of "fenced area" clearly encompassed the backyard Wentz had invaded. *Id.* at 352 (noting that we give undefined terms their ordinary meaning). But the majority offered no definition for the "ordinary meaning" of "fenced area."

---

[4] The meaning of words may be indicated or controlled by those with which they are associated. *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005).

¶12 Justice Madsen concurred, expressing concern that the majority should not imply that any fenced area would support conviction. *Id.* at 354 (Madsen, J., concurring). Justice Madsen proposed that a "fenced area" must be enclosed or contained, or be so situated as to complete an enclosed or contained area, to require entry. *Id.* at 355-57 (Madsen, J., concurring) (citing *State v. Petit*, 32 Wash. 129, 130, 72 P. 1021 (1903) (holding that burglary statute did not apply to a railroad flat car, even though the relevant definition of "building" included "railroad car," because a flat car was not of the same species as the common law's dwelling house, viz., it was not enclosed to bar entry)).

¶13 In this case, Engel argues that the ordinary meaning of "fenced area" is an area totally enclosed by a fence, and Western Asphalt's yard is not a fenced area because the hills and slopes surrounding the yard are not like a fence. Engel argues, in the alternative, that the court should revive the *Roadhs* main purpose test to define a fenced area. The State argues that the common understanding of fenced area includes an area partially enclosed by a fence, where topography and other barriers combine with the fence to close off the area to the public.

¶14 The Court of Appeals adopted the State's argument. Noting that the yard is "surrounded by natural barriers" and a fence, the court held that the combination of terrain and fencing created a "fenced area." *Engel*, 2007 WL 2985088, at *4, 2007 Wash. App. LEXIS 2828, at *10 (citing Justice Madsen's "enclose or contain" language from *Wentz*).

¶15 Construction of a statute is a question of law. *Wentz*, 149 Wn.2d at 346. Where the language of a statute is clear, legislative intent is derived from the language of the statute alone. *Id.* The "plain meaning" of a statutory provision is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. *State v. Jacobs*, 154 Wn.2d 596, 600-01, 115 P.3d 281 (2005). Courts may also resort to the

common law for definitions of terms not defined by statute. *State v. Byrd*, 125 Wn.2d 707, 712, 887 P.2d 396 (1995). A reading that produces absurd results should be avoided, if possible, because we presume the legislature does not intend them. *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983). If the provision is subject to more than one reasonable interpretation, it is ambiguous. *Jacobs*, 154 Wn.2d at 600-01.

¶16 Because the ordinary meaning of "fenced area" encompasses areas both partially and totally enclosed by a fence, we look to the phrase's context to determine its plain meaning.[5] A provision in the criminal code provides that courts may supplement criminal statutes with consistent common law provisions. RCW 9A.04.060. Thus, the plain meaning of "fenced area" may be ascertained by examining the common law.

¶17 " '[C]ommon-law burglary found its theoretical basis in the protection of man's right of habitation. Blackstone wrote that burglary was a heinous offense because of its invasion of this right. . . .' " *Wentz*, 149 Wn.2d at 356 (Madsen, J., concurring) (quoting 2 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.13(c) (1986 & Supp. 2003)). "Burglary" was defined by the common law to be the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony.[6] 3 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 21.1 (2d ed. 2003); *see also Wentz*, 149 Wn.2d at 356 (Madsen, J., concurring) (citing 2 LaFAVE & SCOTT, *supra*, § 8.13(c)-(e)).

---

[5] "[F]ence" is defined as "to surround, separate, or delineate with . . . a fence : [to] erect a fence around or along (as a field or boundary)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 837 (2002).

[6] The elements of burglary have been expanded substantially by statute. Many kinds of structures now satisfy the "dwelling" element. RCW 9A.04.110(5). The crime intended no longer need be a felony. *See* RCW 9A.52.030. The object of the intended crime may be property, as well as persons. *See id*. And the elements of breaking and nighttime entry have been abolished. *See* RCW 9A.52.030; 1975 FINAL LEGISLATIVE REPORT, 44th Wash. Leg., 1st Ex. Sess., at 244.

¶18 "Fenced area" was not a term expressly defined at common law. But a fenced area concept was incorporated into the dwelling element of common law burglary:

> Buildings not used for habitation (such as barns, stables, and other outhouses) might still be the subject of burglary if they were part of the . . . curtilage . . . . The curtilage originally signified a fenced-in area, and it would seem that the buildings need be close enough to the residence to have been included in a reasonable fencing . . . .

3 LaFave & Scott, *supra*, § 21.1, at 213-14 (footnotes omitted). Applying the concept that we may supplement the criminal code with consistent common law, the term "fenced area" may be understood as a contemporary formulation of the concept of curtilage. By including "fenced area" in the definition of a building for burglary, the legislature intended the whole curtilage as a proper object of the crime, rather than just the buildings in the curtilage.

¶19 This interpretation avoids absurd results. Under the State's interpretation, would-be petty criminals who trespass might be liable for burglary even if the property line at their point of entry were unfenced and unmarked, even if they remained on the property without approaching any buildings or structures, and even if the property were such that they could enter and remain without being aware that it was fenced. Such examples are well outside the category of offenses the legislature intended to punish as burglary.

¶20 The common law context indicates that the plain meaning of "fenced area" is limited to the curtilage of a building or structure that itself qualifies as an object of burglary (as defined in RCW 9A.04.110(5)). The curtilage is an area that is completely enclosed either by fencing alone or, as was the case in *Wentz*, a combination of fencing and other structures. This result is consistent with the common law and avoids absurd results.

CONCLUSION

¶21 Upholding an overly broad definition of "fenced area" would extend criminal liability beyond what is war-

ranted by the plain language of the statute, as understood in the context of the common law. Therefore, the Court of Appeals decision affirming Engel's conviction is reversed and the case is remanded with instructions to vacate the conviction and dismiss the charge.[7]

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and STEPHENS, JJ., concur.

[No. 81473-2.   En Banc.]
Argued November 18, 2008.     Decided July 9, 2009.

---

[7] The State concedes that this is the appropriate remedy for an insufficiency of evidence violation. Br. of Resp't at 12 n.6.