# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50580-1-II |
| Respondent, | |
| v. | |
| SHERAYA J. TAYLOR, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — A jury convicted Sheraya Taylor of assault in the second degree, burglary in the first degree, and conspiracy to commit burglary in the first degree. Taylor appeals her conspiracy to commit burglary in the first degree conviction, arguing that insufficient evidence exists to support her conviction. She also claims the trial court committed reversible error by not instructing the jury on the lesser included offense of criminal trespass in the first degree for her burglary in the first degree charge. She raises no arguments as to her conviction for assault in the second degree. Finally, she argues that we should remand for the trial court to strike the imposition of unauthorized legal financial obligations (LFOs).

We remand to strike the unauthorized LFOs but otherwise affirm.

## FACTS

### I. INCIDENT

Brandden McDonough lived in Pierce County with Bryan McLeish and others. Many people, including Steven Napolitano, would often smoke heroin and methamphetamine at McDonough's home.

On the evening in question, one of McDonough's neighbors told him that people in a car across the street wanted to speak with him. McDonough approached the car, a gold Chrysler 300, and saw people inside the car, including Taylor, Pierre Cortez, J.L. (a juvenile), and possibly one other individual. McDonough did not know any of the individuals. Taylor told McDonough that he owed her $200 or the equivalent amount in drugs. McDonough told Taylor he did not have any drugs and told her to leave. McDonough went back inside the house, and the car left.

Shortly thereafter, Napolitano drove to McDonough's home and parked a Subaru in the driveway. Napolitano and two others began smoking methamphetamine in the car.

While the three were smoking, the gold Chrysler 300 drove up and parked in the driveway behind the Subaru. Taylor, Cortez, and J.L. exited the car.

Cortez approached the Subaru and asked for McDonough. Napolitano told Cortez that he would check the house for McDonough.

Napolitano went inside the house and told McDonough that Cortez was looking for him. McDonough told Napolitano to tell Cortez that he was not home. Napolitano then went back outside, conveyed the information to Cortez, and sat down in the Subaru.

Cortez then pulled out a handgun and demanded that Napolitano and the two other individuals inside the Subaru give him what they had. J.L. pointed a shotgun at the occupants of the Subaru. Napolitano exited the car and gave Cortez approximately $100. Cortez told Napolitano, "'You're gonna get me in that house.'" 7 Report of Proceedings (RP) at 767. As Cortez and J.L. led Napolitano to the side door of the house, Napolitano ran away.

At the same time, Taylor had gone to McDonough's window to speak with him. In an aggressive manner, Taylor demanded that McDonough come out with the money or drugs he owed

2

her. Taylor said that if McDonough did not comply, there would be trouble and his debt would be settled one way or another. McDonough told her to leave and said he was not coming outside.

In an attempt to gain entry, Taylor, Cortez, and J.L. all began banging on the doors and windows, and yelling for McDonough to come outside. Cortez attempted to kick in the side door of the house. Taylor pushed against McDonough's window air conditioning unit, knocking it into his bedroom.

Cortez and J.L. then led a friend of McDonough's at gunpoint to the side door. They wanted the friend to provide them access into the home. Taylor followed them to the side door. Taylor told Cortez and J.L. that there was another door they should try. It appeared to a witness that Taylor was "just as part of" attempting entry into the home as Cortez and J.L. 6 RP at 630.

On the home's security monitor, McLeish saw J.L. pointing a shotgun at McDonough's friend. He also heard someone trying to kick in a door. McLeish saw that someone had kicked in the side door but the top latch stayed locked. Figuring the latch would give way, McLeish opened the door. Cortez and J.L. entered the house. J.L. pointed his shotgun at McLeish.

Taylor did not enter the house. She stood on the porch and told McLeish that McDonough sold her fake drugs and that she wanted either her money back or real drugs. At one point in their conversation, McLeish asked Taylor to tell J.L. to stop pointing the shotgun at him. Taylor did not respond.

Knowing that McDonough was currently hiding in a different room, McLeish directed Cortez towards McDonough's room. Cortez went through McDonough's belongings, eventually taking a purse and small plastic bin. Cortez and J.L. exited the house through the front door. Then the police arrived.

3

When they saw the police, Taylor, Cortez, and J.L. all ran into the house through the front door and exited through the side door.

The police eventually arrested Taylor and read her *Miranda*[1] rights. After waiving her rights, Taylor agreed to speak. Taylor stated that she had come to the residence to talk with McDonough, who lived there and owed her $200. She also stated that she arrived in a Chrysler 300 with Cortez and J.L. Taylor said that at the time of their arrival, she did not know that Cortez and J.L. had plans to rob anyone. Taylor stated that she witnessed Cortez tell the occupants of the Subaru to give him everything they had. She also witnessed J.L. pointing a shotgun at the occupants of the Subaru. At this point, Taylor knew that Cortez also had a gun. Taylor stated that she then went to the door of the house to get McDonough to hurry so she could get her money and leave.

Taylor later told a detective that, before the incident, she had loaned a friend $200 to buy heroin from McDonough. She and her friend then decided to recoup the money from McDonough, which is why Taylor went to McDonough's house. Taylor also admitted to pushing in McDonough's air conditioning unit.

II.    CONVICTIONS

The State charged Taylor with robbery in the first degree, attempted robbery in the first degree, burglary in the first degree, conspiracy to commit burglary in the first degree, and two counts of assault in the second degree.

At trial, Taylor requested the court give a lesser included criminal trespass in the first degree instruction for her burglary in the first degree charge. The court denied the request.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The jury convicted Taylor on one count of assault in the second degree, burglary in the first degree, and conspiracy to commit burglary in the first degree.

At sentencing, the court imposed a $100 DNA collection fee and a $200 criminal filing fee. The State had previously collected Taylor's DNA pursuant to another felony conviction. In addition, the court ordered that interest accrue on the financial obligation until paid in full. Taylor appeals.

## ANALYSIS

I.    SUFFICIENCY OF THE EVIDENCE

Taylor argues that insufficient evidence exists to support her conviction for conspiracy to commit burglary in the first degree because no evidence showed that she "planned or conspired with Cortez and J.L. to commit a burglary." Br. of Appellant at 10-11. We disagree.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

The trial court instructed the jury on the elements of conspiracy to commit burglary in the first degree. Taylor only argues that insufficient evidence exists that she agreed to engage in burglary in the first degree.

5

The court also instructed the jury on the elements of burglary in the first degree, that the defendant entered or remained unlawfully in a building with the intent to commit a crime against a person or property therein. It further instructed that the defendant or an accomplice was armed with a deadly weapon or assaulted a person while entering or in the building or in immediate flight from the building.

Drawing all inferences in the State's favor, we conclude that sufficient evidence exists that Taylor agreed to commit burglary in the first degree with Cortez and J.L.

Taylor attempted to get her $200 drug money back. When her peaceful attempt failed, she resorted to violence. She returned to the house with Cortez and J.L. She went to McDonough's window and demanded that he come outside with her money or drugs. Taylor told McDonough that if he did not comply there would be trouble and the debt would be settled one way or another. A reasonable inference from Taylor's statement is that she, Cortez, and J.L. intended to enter the residence without permission and use force, if necessary, to get money or drugs from inside McDonough's house. In fact, they later used force to enter the residence and held a person at gunpoint.

After McDonough told Taylor that he would not be leaving the house, Taylor, Cortez, and J.L. all attempted to get into the house through different access points. At this time, Taylor knew that Cortez and J.L. were armed. Cortez and J.L. sought entry though the side door, unsuccessfully attempting to kick in the door. Because they were unable to kick in the door, Cortez and J.L. then held McDonough's friend at gunpoint and had him seek entry at the side door. Taylor attempted entry by pushing in McDonough's window air conditioning unit.

Taylor eventually joined Cortez and J.L. at the side door. After kicking in the side door proved unsuccessful, Taylor told Cortez and J.L. that there was another door they should try. Taylor was "just as part of" the forced entry as Cortez and J.L. 6 RP at 630.

The group eventually gained entry to the house through the side door. Although Taylor stayed outside while Cortez went through McDonough's belongings, she told McLeish, then being held at gunpoint by J.L., that Cortez was taking items from McDonough's room because McDonough owed her.

When viewing the evidence in the light most favorable to the State, a reasonable jury could have found beyond a reasonable doubt that these acts proved that Taylor acted in concert with Cortez and J.L., both of whom were armed, and that they had an agreement to enter McDonough's residence with an intent to commit a crime therein. We conclude that sufficient evidence supports Taylor's conspiracy to commit burglary in the first degree conviction.

II. LESSER INCLUDED OFFENSE

Taylor argues that the trial court should have instructed the jury on criminal trespass in the first degree. Taylor argues "there was evidence from which the jury could conclude that Taylor was not acting as an accomplice when Cortez and J.L. first entered the home (a burglary)" and therefore a jury could find that "Taylor's subsequent entry into the home, after the police arrived, was unlawful and criminal (a trespass)." Br. of Appellant at 13. We disagree.

Under *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978), a defendant is entitled to an instruction on a lesser included offense if: (1) each element of the lesser offense is necessarily included in the charged offense and (2) the evidence in the case supports an inference that the defendant committed only the lesser crime. Under the first prong of the *Workman* test, the court asks whether the lesser included offense consists only of elements that are necessary to a

7

conviction for the greater, charged offense.[2] *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). Under the second prong, "the court asks whether the evidence presented in the case supports an inference that *only* the lesser offense was committed, to the exclusion of the greater, charged offense." *Condon*, 182 Wn.2d at 316. When the answer to both questions is yes, the requesting party is entitled to the lesser included offense instruction. *Condon*, 182 Wn.2d at 316.

Whether the second prong of the *Workman* test is met is reviewed for an abuse of discretion. *State v. Henderson*, 182 Wn.2d 734, 743, 344 P.3d 1207 (2015). When determining if the evidence at trial was sufficient to support the giving of a lesser included offense instruction, we view the supporting evidence in the light most favorable to the party that requested the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

In considering whether to give a lesser included offense instruction, the trial court considers all of the trial evidence. *Fernandez-Medina*, 141 Wn.2d at 456. To be entitled to a lesser included offense instruction, the evidence must affirmatively establish the defendant's theory of the case and not merely allow the jury to disbelieve evidence of guilt. *Fernandez-Medina*, 141 Wn.2d at 456.

Taylor claims that the fact that she did not enter the home during the burglary indicated that she was not an accomplice. However, as explained above, Taylor acted in concert with Cortez and J.L. In addition, Taylor's conversation with McLeish while Cortez was taking items from McDonough's room rebuts her argument. She explained Cortez's actions to McLeish. McDonough owed her money or drugs.

---

[2] The parties do not dispute that the first prong of the *Workman* test is met here. We agree.

Even drawing all inferences in her favor, the evidence does not affirmatively establish Taylor's theory that she was not an accomplice and that she only committed criminal trespass. Instead, as discussed above, the evidence showed that Taylor was an active participant and therefore an accomplice in the burglary. "[I]t is not enough that the jury might disbelieve the evidence pointing to [Taylor's] guilt." *Fernandez-Medina*, 141 Wn.2d at 456.

We conclude the trial court did not abuse its discretion by not instructing the jury on criminal trespass in the first degree as a lesser included offense to Taylor's burglary in the first degree charge.

III.     UNAUTHORIZED COST PROVISIONS

The parties agree that this case must be remanded for the trial court to strike the imposition of the $100 DNA collection fee, the $200 criminal filing fee, and the interest-accrual provision of Taylor's judgment and sentence. We agree.

In 2018, the legislature amended RCW 10.82.090(1), 36.18.020(h), and 43.43.7541. LAWS OF 2018, ch. 269. As relevant here, the amendments eliminated interest-accrual on non-restitution LFOs, made the DNA database fee non-mandatory for offenders whose DNA has already been collected pursuant to a prior conviction, and prohibited the $200 filing fee as well as all discretionary LFOs on indigent defendants. RCW 10.82.090(1), 36.18.020(h), 43.43.7541; *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). The amendments apply to this case because it was not final on June 7, 2018, when the amendments took effect. *Ramirez*, 191 Wn.2d at 747.

In this case, the State previously collected Taylor's DNA, and the trial court imposed a $100 DNA database fee. The court also found Taylor indigent, and imposed a $200 filing fee and interest on all LFOs.

9

We remand to strike the imposition of the $100 DNA collection fee, the $200 criminal filing fee, and the interest-accrual provision of Taylor's judgment and sentence.  We otherwise affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, P.J.

Sutton, J.