**FILED**
**JUNE 25, 2019**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35990-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CORY EVANS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Cory Evans stole four security cameras and damaged a pole within a gated community. A jury found him guilty of second degree malicious mischief and second degree burglary.

He appeals his conviction for second degree burglary. He argues the State presented insufficient evidence that the gated community is completely enclosed by fencing or a combination of fencing and structures. We agree and, therefore, reverse Evans's conviction for second degree burglary.

FACTS

Todd Hagen, President of Quail Ridge Homeowner's Association (Quail Ridge), noticed that four of the five security cameras on a pole inside the community's gated

entrance were missing. The pole was also damaged. The cost to repair the pole and to replace the four cameras totaled around $4,700.

Hagen obtained the recorded video. The video showed an individual climbing the entry wall, reaching out, and pulling the cameras from the pole. Still pictures from the video were captured, including still shots of the individual's face. Sergeant Kurt Vigesaa looked at the still photos and recognized the suspect as Cory Evans.

The State charged Evans with second degree burglary and second degree malicious mischief. The State called Hagen as its primary witness at trial. Hagen testified that Quail Ridge is a gated community with 38 residences inside the property. The State asked Hagen to describe how the community is gated:

> Q. And tell us about the gated community. How is it gated?
> A. So right off of 54th, there's an—a keypad to enter—to enter the community, and residents would enter either the keypad, or if they have a transponder in their car, they would click a button and open up the gate to come in. And then the gate closes after about 15 seconds or once you enter the community.

Report of Proceedings at 99. Hagen thereafter added that vendors, such as those working on a house, had access only if a resident shared a daytime code with the vendor. The State admitted photographs of the front gate—three of which show a brick wall attached to and extending from the gate.

2

The jury returned guilty verdicts on both counts, and the trial court imposed a standard range sentence.

Evans timely appealed.

ANALYSIS

SUFFICIENCY OF THE EVIDENCE

Evans contends there was insufficient evidence to find him guilty of burglary in the second degree because the State did not show Quail Ridge was completely enclosed by a fence or structure. We agree.

When a defendant challenges the sufficiency of the evidence, he or she admits the truth of all of the State's evidence. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). "Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *Id.* "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against" Evans. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

To find Evans guilty of second degree burglary, the jury had to find beyond a reasonable doubt that Evans entered or remained unlawfully in a building other than a vehicle or dwelling with an intent to commit a crime against a person or property therein.

RCW 9A.52.030(1). "Building," in addition to its ordinary meaning, can also mean a "fenced area." RCW 9A.04.110(5). The area must be completely enclosed by fencing or enclosed by a combination of fencing and other structures. *State v. Engel*, 166 Wn.2d 572, 580, 210 P.3d 1007 (2009); *State v. Wentz*, 149 Wn.2d 342, 68 P.3d 282 (2003).

In *Engel*, the defendant was convicted of second degree burglary for theft of aluminum auto wheels from the business premises of Western Asphalt. *Engel*, 166 Wn.2d at 574. Western Asphalt's premises covered over seven acres, which included several buildings and a yard. *Id.* One-third of the property was fenced. *Id.* The rest of the property was not fenced; it was bordered with stock piles, "'banks, high banks, [and] sloping banks.'" *Id.* at 575 (alteration in original). The theft occurred at night when the business was closed and the front gate was locked. *Id.* at 574. A jury found Engel guilty of second degree burglary, and the Court of Appeals affirmed. *Id.* at 575. The Supreme Court reversed. *Id.* at 581.

The court noted that burglary in the second degree required one to enter or remain unlawfully in a building and, in addition to its ordinary meaning, a building included a "fenced area." *Id.* at 576 (citing RCW 9A.52.030; RCW 9A.04.110(5)).

The State argued that Western Asphalt's boundary was "'surrounded by natural barriers'" and a fence and, these aspects combined, satisfied the "'fenced area'"

4

requirement. *Id.* at 578. Engel argued that the ordinary meaning of a "'fenced area'" is an area completely enclosed by a fence, and Western Asphalt's yard did not meet this definition because of the hills and slopes surrounding a portion of the boundary of the yard. *Id.*

Under the State's argument, criminals could unknowingly cross a boundary that was unmarked and unfenced and, thus, be liable for burglary if they merely remained on the property without approaching any buildings or structures. *Id.* at 580. Thus, to avoid absurd results, the court reasoned that "'fenced area' is limited to the curtilage of a building or structure that itself qualifies as an object of burglary . . . . The curtilage is *an area that is completely enclosed* either by fencing alone or . . . a combination of fencing and other structures." *Id.* (emphasis added).

The State relies on *Wentz*. There, the court affirmed a conviction for first degree burglary where the backyard was surrounded by a six-foot high wooden fence with padlocked gates. 149 Wn.2d at 352. The apprehending officer had to climb over the fence to gain entry into the backyard to arrest Wentz, who was hiding. *Id.* The court determined that a rational fact finder could have found beyond a reasonable doubt that Wentz's backyard was "surrounded" by a fence. *Id.*

We distinguish *Wentz*. There, the evidence supported an inference that the backyard was fully enclosed by a fence. Here, the evidence does not support an inference that the community of 38 residences was fully enclosed. Hagen testified that Quail Ridge is a gated community and residents and vendors enter the community through a gate using an access code. In context, Hagen's testimony is limited to how vehicles access the community. He did not testify that the community was fully enclosed by a fence and/or other structure. The State admitted photographs of the front gate—three of which show a brick wall attached to and extending from the gate. There was no evidence that the brick wall extended around the entire community. Moreover, the phrase "gated community" is sufficiently ambiguous that it does not necessarily mean fully enclosed. *See* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 5th ed., https://www.thefreedictionary.com/gated+community (last visited June 21, 2019) ("A subdivision or neighborhood, often surrounded by a barrier, to which entry is restricted to residents and their guests.").

Because a rational jury could not have found beyond a reasonable doubt that Quail Ridge is fully enclosed by a fence and/or other structure, we reverse Evans's conviction for second degree burglary. We direct the trial court to resentence Evans on his singular conviction for second degree malicious mischief.

No. 35990-5-III
*State v. Evans*

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____          _____
Fearing, J.                                                          Pennell, J.

7