IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39315-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN HENRY SLIGER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

STAAB, A.C.J. — John Sliger is charged with vehicular homicide. At the scene of the accident Sliger removed a lump of chewing tobacco from his mouth. Prior to taking a breath test, when asked if he had any foreign substances in his mouth, he answered no. After checking his mouth, the officer noted strands of tobacco in his teeth that were not removed prior to taking the test. Sliger filed a pretrial motion to suppress the breath test results.

For a breath test to be admissible under RCW 46.61.506(4)(a)(iii), the State must produce prima facie evidence that the subject did not have any foreign substances in their mouth at the beginning of the observation period. This burden can be met with evidence that either the subject denied having anything in their mouth or evidence that a check of the mouth revealed no foreign substances. Here, the trial court found that tobacco was a foreign substance, that Sliger removed the tobacco from his mouth before taking the test,

but did not remove the strands of tobacco between his teeth. Based on Sliger's denial of a foreign substance, the trial court concluded that the State met its burden of producing prima facie evidence that Sliger did not have a foreign substance in his mouth at the beginning of the observation period.

We affirm. An officer can rely on a subject's denial so long as the officer is not otherwise aware of the presence of a foreign substance. Here, Sliger denied having any foreign substances in his mouth, and when the officer checked, he did not see any foreign substances. He did see strands of tobacco but did not consider them to be a foreign substance. Nor did the trial court find that strands of tobacco were a foreign substance. Thus, the trial court did not err in concluding that Sliger's denial was prima facie evidence that he did not have any foreign substances in his mouth. As the trial court noted, admissibility is different from validity, and Sliger can still use evidence of the tobacco strands to challenge the validity of the test at trial.

## BACKGROUND

The admissibility of a breath test is governed by case law, statute, and regulations. Specifically, RCW 46.61.506(4)(a) requires the State to produce prima facie evidence of certain facts before a test can be admitted as evidence. One of the facts is evidence that the person being tested "did not have any foreign substances, not to include dental work or piercings, fixed or removable, in his or her mouth at the beginning of the fifteen-minute observation period." RCW 46.61.506(4)(a)(iii).

2

On April 26, 2020, John Henry Sliger was involved in a dirt bike collision. Deputy Mitchell Kahns was the officer dispatched to the scene. Once at the scene, Deputy Kahns began asking Sliger questions about the incident, and Sliger admitted he had consumed alcohol a few hours before the crash. Deputy Kahns noted that Sliger had chewing tobacco in his mouth, but testified that Sliger took it out at the scene. After a preliminary investigation, Deputy Kahns placed Sliger under arrest for driving while under the influence and transported him to jail.

Once they arrived at the jail, Deputy Kahns began preparations to administer the Draeger Breath Alcohol Test. Deputy Kahns asked Sliger if Sliger had anything in his mouth, to which Sliger responded no. Deputy Kahns then checked Sliger's mouth and noted tiny strands of tobacco left in between a few of Sliger's teeth. He later characterized it as "debris." Rep. of Proc. (RP) at 33. When asked if he saw any foreign substances in Sliger's mouth, Deputy Kahns testified no. He indicated that he made note of the tobacco strands in his report because "they were there," but did not have Sliger remove the strands before administering the test.[1] RP at 19.

---

[1] In his narrative report, Deputy Kahns indicated that he did not observe any foreign substances in Sliger's mouth, but in his DUI report, Deputy Kahns checked the box "yes" on whether any foreign substances were found and then provided an explanation: "tiny tobacco strands stuck in teeth." CP at 35. During the motion to suppress, Deputy Kahns testified that he did not believe, based on his training, that tobacco strands qualified as a foreign substance, but wanted to make a note of the strands so he checked the "yes" box on whether there were foreign substances.

Sliger filed a motion to suppress the results of the breath test, arguing that the State would not be able to meet the foundational requirements for admission. In addition to the arresting officer, the State called Trooper John Axtman, a breath test technician and instructor. Trooper Axtman testified that it was important for the machine to measure alcohol from the lungs, rather than mouth alcohol. One way to ensure that there is no mouth alcohol is to ask the suspect if they have anything in their mouth and then check the mouth for foreign substances. In addition, the machine's slope detector tests for mouth alcohol. If the slope detector rises too quickly, then mouth alcohol is present and the machine will register an invalid sample.

The prosecutor then asked Trooper Axtman about the effects of tobacco on the test:

> [Prosecutor] —is chewing tobacco before the 15 minutes and they remove it, are you gonna have any concerns with, you know, if they don't brush their teeth before they do the test?
>
> [Axtman]: If they removed it, no. Now, if they didn't remove it then, yeah, I'd have some heartache on it if they left a lump of tobacco in there.
>
> [Prosecutor]: Okay. And you just now said a lump of tobacco. If somebody's got, you know, some flecks on their teeth, is that going to cause you the same heartache as a lump of tobacco?
>
> [Axtman]: No, it's not. I used to chew. And sometimes it can be difficult to get those little tiny grits out of your teeth, even after rinsing it. So, again, you do the best with what you have.
>
> . . . .

4

[Prosecutor]: Would you consider, you know, having a piece of bread stuck between your teeth or a piece of tobacco flake on your teeth to be foreign substances that would render this invalid, an invalid sample?

[Axtman]: I'd have no—I'd have no concerns with the breath test. With, again, with very small amounts like that.

[Prosecutor]: Uh-huh.

[Axtman]: Now, again, if there were large amounts I would have a concern.

[Prosecutor]: Okay. What do you consider a large amount?

[Axtman]: Well, for tobacco purposes, a lump of tobacco in there.

[Prosecutor]: Okay. Why is that?

[Axtman]: Because it technically is a foreign substance.

[Prosecutor]: Okay. But what is it about having that in there that's going to affect the breath test?

[Axtman]: There's case—there's case studies showing that—if you really want me to get into it I can get into the case studies -- but showing the effects or lack of for the breath testing. But, again, the—the—the big lump, that's something that the officer should have removed.

[Prosecutor]: Okay.

[Axtman]: For the breath testing.

[Prosecutor]: Okay.

[Axtman]: So I would not be okay if that was left in there.

RP at 49-51. On cross-examination, Trooper Axtman acknowledged that if a suspect denied having anything in their mouth, but the officer knew otherwise, the officer would be required to remove the foreign substance.

Following this testimony, the trial court denied the motion to suppress. The court concluded that the State had introduced prima facie evidence that Sliger did not have any

5

foreign substances in his mouth based on Sliger's denial.  It explained that evidence that

strands of tobacco remained between Sliger's teeth could be used at trial to challenge the

validity of the test.  Following the hearing, the court entered the following relevant

findings and conclusions:

> [FOF] 2.  At the scene of the arrest, Mr. Sliger had chewing tobacco in his mouth but removed it at the scene prior to transport to the Stevens County Jail.
>
> [FOF] 6.  Prior to the breath test, Deputy Kahns asked Mr. Sliger if he had any substances in his mouth and Mr. Sliger said "no."
> [FOF] 7.  Prior to the breath test, Deputy Kahns checked Mr. Sliger's mouth for foreign substances.  He noted tiny strands of tobacco between Mr. Sliger's teeth.  Tobacco is a foreign substance, but the tobacco strands were not removed.
>
> . . . .
>
> [COL] 6.  The statutory test for admissibility requires strict compliance. Deputy Kahns [sic] asked Mr. Sliger if he had any foreign substances in his mouth and received a denial.  The State has met the burden of providing prima facie evidence that Mr. Sliger did not have any foreign substances in his mouth at the beginning of the fifteen-minute observation period, based solely on Mr. Sliger's denial that he had any foreign substances in his mouth.  Therefore, the Draeger BAC results are admissible at trial.

Clerk's Papers (CP) at 90-91, 93.

Our commissioner granted Sliger's petition for discretionary review.  On appeal,

Sliger challenges finding of fact 2 and conclusion of law 6.

6

ANALYSIS

This case boils down to whether strands of tobacco in a suspect's teeth constitute a foreign substance that must be removed before administering a breath test. Sliger appeals the trial court's denial of his motion to suppress the breath test result, arguing that the State failed to meet its burden of showing the test was admissible under RCW 46.61.506(4)(a). In particular, Sliger challenges the trial court's finding that he removed the tobacco in his mouth prior to the test and the court's conclusion that his denial of having anything in his mouth was sufficient to meet the State's burden of showing that "the person tested did not have any foreign substances . . . in his or her mouth." Appellant's Br. Appendix at 31. He contends that the finding and conclusion are inconsistent with the finding that strands of tobacco remained in between his teeth.

Written findings entered after a CrR 3.6 suppression hearing will be upheld if they are supported by substantial evidence in the record. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Evidence is considered "substantial" if it is "sufficient to persuade a fair-minded, rational person of the truth of the finding." *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999). Conclusions of law are reviewed de novo. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

Construction of a statute is a question of law reviewed de novo. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). When interpreting a statute, our "fundamental objective is to ascertain and give effect to the legislature's intent."

*Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 405, 377 P.3d 199 (2016).  Where the language of a statute is clear, the legislature's intent will be derived from the plain language of the statute.  *Engel*, 166 Wn.2d at 578.  When a term is not defined, we may result to the common law definition.  *Id*. at 578-79.  We should avoid an interpretation that produces an absurd result.  *Id*. at 579.

When the government moves to admit the results from a breath test, it must produce prima facie evidence that the criteria set forth in RCW 46.61.506(4) have been met.  "For purposes of this section, 'prima facie evidence' is evidence of sufficient circumstances that would support a logical and reasonable inference of the facts sought to be proved."  RCW 46.61.506(4)(b).  Moreover, in assessing whether the foundational evidence is sufficient, the court is required to assume the truth of the government's evidence and construe reasonable inferences in favor of the government.  *Id*.  Once the foundational requirements are met and the test results are admitted, a defendant may attack the test results in a particular case by challenging the reliability or validity of the results.  *City of Seattle v. Allison*, 148 Wn.2d 75, 80, 59 P.3d 85 (2002).

RCW 46.61.506(4)(a) sets forth eight criteria that the State must show for a breath test to be admissible.  For purposes of this appeal, the only contested criteria is whether the State has produced prima facia evidence that "[t]he person being tested did not have *any foreign substances* . . . in his or her mouth at the beginning of the fifteen-minute observation period."  RCW 46.61.506(4)(a)(iii) (emphasis added).

8

In conformity with the requirements of RCW 46.61.506(3), the state toxicologist has adopted regulations that provide the approved methods for administering the breath test. The regulations provide two alternative methods for determining if a foreign substance is present:

> A determination as to whether a subject has a foreign substance in his or her mouth will be made by either an examination of the mouth or a denial by the person that he or she has any foreign substances in their mouth.

WAC 448-16-040(1). This methodology does not require or guarantee complete accuracy. Instead, if interference is detected, or if the test records an invalid sample, the testing must start over after determining that the subject does not have foreign substances in their mouth. WAC 448-16-040(2), (3).

While the regulations only require the officer to use one method for determining the absence of a foreign substance, here Officer Kahns employed both methods. Nothing in the regulations precludes the use of both methods. On appeal, defense counsel admits that if the deputy had only asked Sliger about foreign substances, without checking his mouth, then Sliger's negative answer would have been sufficient to meet the requirement of WAC 448-16-040. Appellant's Br. at 16. But Sliger argues that because the deputy also checked his mouth, and observed strands of tobacco, the evidence does not support the trial court's finding that Sliger had removed the tobacco from his mouth, and the trial court erred in concluding that the deputy could rely on Sliger's answer.

9

We agree that an officer who is aware that a subject has a foreign substance in their mouth cannot ignore this information even if a subject denies having anything in their mouth. The BAC technician who testified at the motion to suppress agreed with this. In this respect, the court's conclusion, that Sliger's denial was sufficient to meet the State's burden, is correct so long as Deputy Kahns was not otherwise aware of a foreign substance in Sliger's mouth.

Sliger does not challenge the trial court's finding that tobacco is a foreign substance, but he does challenge the court's finding that Sliger removed the tobacco from his mouth because strands of tobacco remained. We conclude that the evidence and the law support a distinction between a lump of chewing tobacco and tiny strands of tobacco for purposes of determining admissibility of a breath test.

The trial court's findings distinguished between tobacco and strands of tobacco. While the court found that tobacco was a foreign substance, and this substance had been removed, the court did not find that strands of tobacco would qualify as a foreign substance. The court's distinction between tobacco and tiny strands of tobacco for purposes of finding a foreign substance is supported by the evidence.[2] Not only did the technician testify that strands of tobacco would not adversely affect the test, but he also

_____

[2] While it would have been helpful if the court had made an explicit finding that strands of tobacco did not constitute a foreign substance, "where a trial court does not make a finding of fact, we presume a finding against such fact." *Recreational Equip., Inc. v. World Wrapps Nw., Inc.*, 165 Wn. App. 553, 565, 266 P.3d 924 (2011).

testified that if the substance were of sufficient quantity to retain mouth alcohol, the machine would invalidate the test. Deputy Kahns testified that he did not believe the strands of tobacco to be a foreign substance.

Regardless of the court's findings, Sliger contends that RCW 46.61.506(4)(a)(iii) requires the State to produce prima facie evidence that the subject did not have any foreign substance in his mouth at the beginning of the observation period. His argument focuses on the word "any" without attempting to define a "foreign substance."

A "foreign substance" is defined as a substance that "adversely affect[s] the accuracy of test results." *City of Sunnyside v. Fernandez*, 59 Wn. App. 578, 582, 799 P.2d 753 (1990). This definition leaves room for a substance such as tobacco to be considered a foreign substance based on the amount of the substance present. In other words, tobacco only becomes a foreign substance when it is present in an amount sufficient to adversely affect the test. Reading the statute otherwise would lead to absurd results. If we were to hold that the presence of any amount of a substance that is foreign to the mouth renders a test inadmissible, then in theory the microscopic presence of any such substance would impact admissibility. Such a result is not required by the regulations or the statute.

The trial court's finding that Sliger had removed the foreign substance, tobacco, from his mouth is supported by the evidence. Because Deputy Kahns was not otherwise aware of any other foreign substances, the trial court did not err in concluding that

11

Sliger's denial was prima facie evidence that he did not have any foreign substances in his mouth.

We affirm the trial court's denial of Sliger's motion to suppress the results of the breath test and remand for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Pennell, J.

_____
Cooney, J.