[No. 85437-8.   En Banc.]

Argued September 15, 2011.     Decided December 1, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL HERBERT
PANNELL, *Petitioner*.

*Stephanie C. Cunningham*, for petitioner.

*Mark E. Lindquist, Prosecuting Attorney*, and *Thomas C. Roberts, Deputy*, for respondent.

¶1 CHAMBERS, J. — Daniel Pannell pleaded guilty to incest and child molestation. His lengthy sentence was suspended pending satisfactory progress in sexual offender treatment,

among other things. Unfortunately, he failed to make satisfactory progress and his suspended sentence was revoked. He now contends he is entitled to credit for the time his sentence was suspended, at least to the extent that his time incarcerated, his time in postconfinement community custody, and his time on the suspended sentence added together exceed the statutory maximum for class B felonies. We conclude he is not entitled to credit against his sentence for time spent in the community under a special sex offender sentence alternative (SSOSA) before his suspended sentence was revoked. We affirm the Court of Appeals. *State v. Pannell*, noted at 158 Wn. App. 1041, 2010 WL 4630935, 2010 Wash. App. LEXIS 2553.

## FACTS

¶2 In 2002, Pannell's 16-year-old daughter told her stepmother that Pannell had sexually assaulted her. Not long afterward, the State charged him with incest. The record suggests that he had repeatedly propositioned his daughter before one day telling "her to go into the bedroom and pull her pants down, which she ultimately did." Clerk's Papers (CP) at 2. After she refused to have intercourse with him he "performed oral sex on her." CP at 2. After a brief investigation, the State amended the charges to add four counts of second degree child molestation of another victim. In 2003, Pannell pleaded guilty to five counts of incest and child molestation, each count carrying a maximum sentence of 120 months. RCW 9A.20.021(1)(b). Judge Katherine M. Stolz sentenced Pannell to a standard range sentence of 116 months in prison but suspended the execution of the sentence conditioned on his satisfactory progress in a SSOSA. Specifically, the judgment and sentence said:

> **SUSPENSION OF SENTENCE.** The execution of this sentence is suspended; and the defendant is placed on community custody under the charge of DOC [Department of Corrections] for the length of the suspended sentence or three years, whichever is greater, and shall comply with all rules, regula-

tions and requirements of DOC and shall perform affirmative acts necessary to monitor compliance with the orders of the court as required by DOC. Community custody may be extended for up to the statutory maximum term of the sentence.

CP at 41. Pannell was remanded into community custody and began outpatient sexual offender treatment.

¶3 Unfortunately, Pannell did not do well in treatment. On May 13, 2005, he was advised by the court "that he had ninety days to show marked improvement." CP at 57. While he made some initial improvement, by that November, his treatment provider reported that he had "difficulty with boundary issues, [and] appeared to be dishonest and manipulative with his group, his sex offender treatment provider and CCO [community custody officer]." CP at 74. In May 2006, his sexual deviancy treatment counselor terminated treatment and recommended revoking Pannell's suspended sentence. Among other things, his counselor reported that "Mr. Pannell has failed to gain an understanding of his offense dynamics or the precipitating factors that lead to his offense. He continues to blame the victim for his crimes and fails to accept responsibility for his actions." CP at 58. The counselor also stressed that Pannell had "made no demonstrable effort to pay his [treatment] bill." *Id.* The counselor concluded that "Mr. Pannell is a poor candidate for treatment and that may in fact be unamenable to treatment." *Id.* After receiving reports from both Pannell's counselor and community corrections officer, the State petitioned the court to revoke Pannell's suspended sentence. The judge granted the petition and imposed the full 116-month sentence, plus 3 to 4 years of community placement.

¶4 In 2009, Pannell filed a CrR 7.8 motion seeking to be resentenced. Initially, he contended his judgment and sentence was "invalid on its face" because, depending on whether he accrued sufficient good time credit, he could potentially serve more than the 120-month statutory maximum for class B felonies. RCW 9A.20.021(1)(b); CP at 85. In

the wake of *In re Personal Restraint of Brooks*, 166 Wn.2d 664, 211 P.3d 1023 (2009), the State agreed with him and offered to arrange to have his sentence clarified to make clear he would not serve more than 120 months in combined total confinement and postconfinement community custody. Pannell rejected the offer because it would not also give him credit for the time he was in the community under the suspended sentence. Essentially, he contended that community custody under a suspended sentence was the same as postconfinement community custody and since, under the Sentencing Reform Act of 1981, chapter 9.94A RCW, he was entitled to credit for the latter; he was also entitled to credit for the former.

¶5 At the hearing on the CrR 7.8 motion, Judge Stolz concluded that community custody under a suspended SSOSA sentence was analogous to bail, and "you don't get credit for the time that you're out on bail." Verbatim Report of Proceedings at 6. Judge Stolz did clarify Pannell's judgment and sentence pursuant to *Brooks*, 166 Wn.2d 664, by appending an order that said:

> The total time that Defendant can be under this Sentence is 120 months. This includes time spent in the Pierce County Jail; [i]n the Department of Corrections & on Community Custody post release from the Department of Corrections.

CP at 123. Unsatisfied, Pannell appealed. The Court of Appeals affirmed, and we took review. *State v. Pannell*, 171 Wn.2d 1009, 249 P.3d 1028 (2011).

## ANALYSIS

¶6 We must decide whether the legislature intended that offenders sentenced under a SSOSA receive credit for the time they spend in the community on a suspended sentence against their maximum sentence. Pannell's arguments rely purely on statutory interpretation. In cases of statutory interpretation, "[t]he court's fundamental objective is to ascertain and carry out the

Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). Only issues of law are before us, and our review is de novo. *Brooks*, 166 Wn.2d at 667 (citing *State v. Miller*, 156 Wn.2d 23, 27, 123 P.3d 827 (2005)).

¶7 The legislature enacted the SSOSA system to create a sentencing alternative for certain first time sex offenders who plead guilty and are found amenable to treatment. LAWS OF 2000, ch. 28 § 20(2), (3); RCW 9.94A.670(2), (3).[1] Currently under the SSOSA statute, if the sentence is less than 11 years of confinement, the trial judge is authorized to suspend it. RCW 9.94A.670(4). The trial judge must impose treatment on the offender, and the legislature has created a heavy incentive for offenders to comply with conditions and to make satisfactory progress in treatment. If they do not comply with conditions and do not make satisfactory progress, the suspended sentence will be revoked and the prison sentence will be reimposed. RCW 9.94A.670(5). The court monitors the offender's progress and

> may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment. All confinement time served during the period of community custody shall be credited to the offender if the suspended sentence is revoked.

RCW 9.94A.670(11);[2] *see also* RCW 9.94A.670(8) (monitoring requirements).

---

[1] Since it was first enacted, the Sentencing Reform Act of 1981 has authorized trial judges to give this sentencing alternative. *See* former RCW 9.94A.120(7) (1981); LAWS OF 1981, ch. 137, § 12(5). Over the years, the statutory directions have become more and more detailed, and the SSOSA statute has been separately codified as RCW 9.94A.670.

[2] At the time of the offense, this was codified as former RCW 9.94A.670(10) (2000).

¶8 Another portion of the Sentencing Reform Act of 1981 creates maximum sentences by class of crime, and yet another directs that community custody be considered part of an offender's sentence. RCW 9A.20.021; RCW 9.94A-.505(5). Essentially, Pannell contends that since under RCW 9.94A.505(5) community custody is considered part of an offender's sentence, the legislature intended that community custody while a sentence is suspended under a SSOSA also be considered part of an offender's sentence, at least for purposes of the statutory maximum under RCW 9A.20.021(1)(b).

¶9 Like an old milk stool, there are three legs to Pannell's argument. First, when describing the conditions imposed on an offender during the suspended term of a SSOSA sentence, the legislature used the term "community custody." The SSOSA statute allows a trial court to suspend an offender's term of confinement and impose "[a] term *of community custody* equal to the length of the suspended sentence." RCW 9.94A.670(5)(b) (emphasis added).

¶10 Second, an offender's sentence cannot exceed the statutory maximum term for the class of crime for which the offender was convicted. RCW 9A.20.021(1).[3] Pannell was convicted of a class B felony. The maximum sentence for a class B felony is 10 years or 120 months. RCW 9A.20-.021(1)(b). Another statute specifies that courts must include "community custody" when calculating the maximum sentence. "[A] court may not impose a sentence providing for a term of confinement or community custody that exceeds the statutory maximum for the crime." RCW 9.94A.505(5). In *Brooks*, we held that the judgment and sentence itself must reflect this limitation. Where the term of confinement and community custody imposed by the trial court has the potential to exceed the statutory maximum

---

[3] "Unless a different maximum sentence for a classified felony is specifically established by a statute of this state, no person convicted of a classified felony shall be punished by confinement or fine exceeding the following": life imprisonment for a class A felony, 10 years for a class B felony, or 5 years for a class C felony. RCW 9A.20.021(1).

for the crime, the trial court must explicitly state "the combination of confinement and community custody shall not exceed the statutory maximum." *Brooks*, 166 Wn.2d at 675.

¶11 Third, Pannell correctly points out that if the nearly three years he was on a suspended sentence before his SSOSA was revoked is added to the 116-month sentence (regardless of his postconfinement community custody), his total sentence will exceed 120 months. In his syllogistic argument, it follows then in calculating his maximum sentence, he must receive credit for the time he spent in the community while receiving treatment before his suspended sentence was revoked.

¶12 The State argues that Pannell fails to read the statutes as a whole and in their full context. It contends that when the SSOSA and maximum sentence statutes are read together with other statutes relating to community custody, it is clear that the legislature did not intend that time spent in the community on a suspended sentence that is later revoked be considered as part of time served. The State relies on the language of the statutes and on two Court of Appeals opinions, *State v. Miller*, 159 Wn. App. 911, 247 P.3d 457, *review denied*, 172 Wn.2d 1010, 259 P.3d 1109 (2011), and *State v. Gartrell*, 138 Wn. App. 787, 790, 158 P.3d 636 (2007), which distinguish preconfinement community custody from postconfinement community custody following a revoked suspended sentence. The State has the better argument.

¶13 The SSOSA statute itself strongly suggests that *only* time spent in confinement during the suspended period of a SSOSA sentence is to be considered when calculating credit toward the maximum sentence. The statute specifically states, "All confinement time served during the period of community custody shall be credited to the offender if the suspended sentence is revoked." RCW

9.94A.670(11).[4] This statute would be superfluous if the legislature intended that all time spent on community custody on a suspended SSOSA sentence be credited if such sentence is revoked. Interpreting it as the petitioner suggests would violate the principle that "[a] statute or constitutional provision should, if possible, be so construed that no clause, sentence or word shall be superfluous, void, or insignificant." *Grp. Health Coop. of Puget Sound v. King County Med. Soc'y*, 39 Wn.2d 586, 637, 237 P.2d 737 (1951) (citing *Martin v. Dep't of Soc. Sec.*, 12 Wn.2d 329, 121 P.2d 394 (1942)).

¶14 The Court of Appeals has reached the same conclusion in two substantially similar cases, *Miller*, 159 Wn. App. 911, and *Gartrell*, 138 Wn. App. at 790. Gartrell was given a sentence of 20 months plus 36 to 48 months of community custody, suspended under SSOSA. Eleven months later, the court revoked Gartrell's suspended SSOSA sentence. Gartrell argued that the 11 months he spent on community custody while his sentence was suspended should be credited to his 36 to 48 months of postconfinement community custody. *Gartrell*, 138 Wn. App. at 788-90. He contended that community custody itself was a type of confinement under RCW 9.94A.030(5) and, therefore, he was entitled to credit. *Id.* at 789-90. The Court of Appeals disagreed and found that the SSOSA statute was unambiguous and that "the time a sex offender serves in community custody under a SSOSA is not credited towards community custody time ordered as part of a reinstated, standard range sentence." *Id.* at 788, 791. While the *Gartrell* court acknowledged that under the Sentencing Reform Act of 1981, community custody was treated as confinement at certain times and for

---

[4] The Court of Appeals held that Pannell's suspended sentence did not fit the statutory definitions of complete or partial confinement. It is not clear to us that Pannell argues that he was confined. He primarily argues that we must include his time while the sentence was suspended because it is described as community custody in RCW 9.94A.670(5)(b). We do not reach whether some SSOSA conditions could be so onerous as to amount to partial confinement even if they do not meet the statutory definition.

certain purposes, "[t]he SSOSA statute itself differentiates between confinement and community custody." *Id.* at 790.[5]

¶15 The Court of Appeals also faced the same basic factual issue presented to us today in *Miller*, 159 Wn. App. 911. Miller was convicted of second degree child rape when he was 18 years old and given a 93- to 123-month sentence, suspended pursuant to SSOSA. Nine years later, after Miller completed a 36-month outpatient sex offender treatment program and continued on court supervision for many years, the trial judge vacated his SSOSA suspended sentence and imposed Miller's original sentence.[6] The trial court also imposed 10 years of community placement to be served after Miller's incarceration, among other things. Miller unsuccessfully argued that he was entitled to credit for the time served under his suspended sentence against the ordered postconviction community custody based upon a double jeopardy theory. *Id.* at 923. He argued that he was being punished twice for the same offense. Since, as the Court of Appeals properly noted, "Miller's double jeopardy claim [did] not involve the consequences of a prior trial," the double jeopardy claim turned on "whether the legislature intended to require that Miller serve community custody both as part of his SSOSA and after incarceration for his reinstated 123-month sentence." *Id.* at 924-25 (citing *Jones v. Thomas*, 491 U.S. 376, 381, 109 S. Ct. 2522, 105 L. Ed. 2d 322 (1989)). The court concluded that "[a]n ordinary reading of the statute indicates that the legislature intended that a

---

[5] We recognize that the conflict before the *Gartrell* court revolved in part around a portion of the Sentencing Reform Act of 1981 that generally denies certain categories of offenders' general release based on earned early release credits. RCW 9.94A.728(2); *In re Pers. Restraint of Crowder*, 97 Wn. App. 598, 601, 985 P.2d 944 (1999). These provisions are not directly before us today.

[6] Earlier on, Miller had violated the conditions of his suspended sentence by moving into a house with a child. The trial judge sanctioned him with 45 days in jail and modified the judgment and sentence to say, " 'Defendant shall NOT have contact with minor children, no exceptions.' " *Miller*, 159 Wn. App. at 915 (quoting record). Nonetheless, six years later, Miller dated a woman with a son who was eight years old, blind, and mildly autistic; spent time alone with the child; lied to his community corrections officer about it; and "allowed the boy to look at his tattoos." *Id.* at 917.

sex offender will serve community custody while a SSOSA is in effect and, if the SSOSA is revoked, will also serve additional community custody following incarceration." *Id.* at 925. The Court of Appeals relied heavily on the legislature's express statement that "confinement time" shall be credited to the offender if the suspended sentence is revoked. "Notably, the SSOSA statute does *not* provide that community custody time must be credited where a suspended sentence is revoked. Moreover, the sentencing statute operating in 1998 provides evidence that our legislature was aware that it could credit community custody against community placement. Former RCW 9.94A-.120(9)(a) [(1998)]."[7] *Id.* at 928.

¶16 As the *Miller* court noted, the legislature had different goals in creating the type of community custody a SSOSA offender was under while under a suspended sentence and the type of community custody that would follow after incarceration. *Id.* at 926 (quoting Laws of 1996, ch. 275, § 1). The SSOSA suspended sentence allows for treatment, backed by the significant incentive of avoiding incarceration. *Id.* at 927 (quoting David Boerner, Sentencing in Washington § 8.1, at 8-2 (1985)). By contrast, postconfinement community custody " 'protect[s] the community, support[s] crime victims, assist[s] offenders to change, and provid[es] important information to decision makers.' " *Id.* at 926 (quoting Laws of 1996, ch. 275, § 1). They serve different purposes, and Pannell does not persuade us that the legislature intended that they be treated the same.

¶18 Pannell seems to suggest that because he was under some conditions while in the community under a suspended sentence, he was under confinement and entitled to credit. But as the trial judge noted, an offender is not generally entitled to credit for time out on bail, nor, as

---

[7] At the time Miller was originally sentenced, statutes governing SSOSA were found in a general sentencing statute, former RCW 9.94A.120(8) (1998). Since then, the SSOSA provisions have been codified in RCW 9.94A.670.

the State notes, constitutionally entitled to credit while on probation. *In re Pers. Restraint of Phelan*, 97 Wn.2d 590, 598, 647 P.2d 1026 (1982). The legislature is of course free to give such credit but, within constitutional constraints, is not required to do so. *See generally Harris v. Charles*, 171 Wn.2d 455, 462, 256 P.3d 328 (2011) (finding no equal protection violation in granting some, but not all, offenders credit for time on electronic home monitoring). While it may be that a trial judge could impose conditions that would be so restrictive as to belie the nature of a "suspended" sentence or that in certain circumstances, equal protection *would* demand that the offender be given credit, Pannell makes no argument of such here.

¶19 We agree with our Court of Appeals. When the legislature created SSOSA as an alternative for sex offenders amenable to treatment, it provided to the courts two tools: a carrot and a whip. The suspension of the sentence subject to treatment and other conditions is the carrot. Incarceration followed by supervised time in the community is the whip. Time spent eating the carrot and time spent under the whip are qualitatively different. The legislature did not intend that the time the offender spends nibbling at the carrot would reduce time under the whip. Pannell is illustrative. He spent nearly three years in the community before his suspended sentence was revoked. We agree with the courts below that the suspended portion of a SSOSA is analogous to bail or pre-Sentencing Reform Act of 1981 probation, which is not considered in calculating the maximum sentence. In view of the SSOSA revocation, it does not follow that the legislature intended Pannell's incarceration and subsequent community custody be reduced by nearly three years. To provide credit for time spent under a suspended sentence against the imposed sentence would effectively erode the incentives, which are integral to the SSOSA statute.

## CONCLUSION

¶20 The SSOSA statute offers certain offenders the chance to live and work in the community so long as they comply with treatment and other conditions. The SSOSA statute threatens to deprive offenders of their relative freedom for failure to do so. We hold that under the plain language of the SSOSA statute, RCW 9.94A.670, and in light of the overarching statutory scheme, an offender is not entitled to credit against the maximum sentence for nonconfined time spent when a sentence is suspended pursuant to a SSOSA. We affirm the Court of Appeals.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.