## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  55721-5-II |
| Respondent, | |
| v. | UNPUBLISHED  OPINION |
| CORY TAYLOR PRATT, | |
| Appellant. | |

WORSWICK, J. — Cory Pratt appeals his sentence, arguing (1) the trial court erred in finding him ineligible for Special Sex Offender Sentencing Alternative (SSOSA), (2) the SSOSA requirement that the defendant must have a close relationship with the victim violates the equal protection clause, and (3) the trial court erred in denying Pratt credit toward confinement for time served in community custody.

We disagree with all of Pratt's arguments and affirm the trial court.

### FACTS

#### I. BACKGROUND AND FIRST SENTENCING

Pratt was found guilty of child molestation in the first degree after a bench trial, and the court sentenced him to a SSOSA.  The State appealed Pratt's SSOSA sentence arguing that he did not have the required statutory connection with the victim.  *State v. Pratt*, 11 Wn. App. 2d 450, 452, 454 P.3d 875 (2019).  We reversed the sentence, and our Supreme Court agreed.  *Pratt*, 11 Wn. App. 2d at 453; *State v. Pratt*, 196 Wn.2d 849, 858-59, 479 P.3d 680 (2021).  The Supreme Court summarized the facts as follows:

In July 2016, Pratt and his daughter attended his cousin's birthday party. Several young girls spent the night after the party, including M.B., the 10-year-old daughter of Pratt's aunt's stepsister. Pratt slept in a backyard tent with the girls. The next day, M.B. told her grandmother and parents that Pratt had touched her in the tent. M.B. testified that Pratt touched her arm, her lower back, and rubbed her crotch. M.B.'s mother contacted police. In October 2016, Pratt was charged with one count of child molestation in the first degree. After a two-day bench trial, Pratt was found guilty of the charge.

Pratt requested a SSOSA sentence pursuant to RCW 9.94A.670.[1] The State objected, arguing that Pratt was ineligible because he did not have an "established relationship" with M.B. as required by the statute:

> Here, [Pratt] had only met this victim a few hours before the actual crime took place . . . maybe just over 12 hours after he had met her.

> So there clearly is not an established relationship.

*Pratt*, 196 Wn.2d at 851 (alterations in original) (citations omitted).

At trial, the State introduced evidence that MB told an investigator that she had never met Pratt or Pratt's daughter until the party. The State also introduced evidence that Pratt told the investigator that he may have met MB's family years ago because his aunt and uncle have had "get-togethers" that included MB's parents, but he could not say with certainty if their children had also attended. 1 Verbatim Report of Proceedings (VRP) (Oct. 2, 2017) at 37. Pratt explained that he did not interact with MB at the party and that the most interaction he had with MB was to hand her a skewer with marshmallows on it. When asked if he had any conversations with MB, Pratt replied "[n]ot really" but on the day after the party, she sat near him and he thinks he asked her name. 1 VRP (Oct. 2, 2017) at 37.

---

[1] An offender is eligible for SSOSA if he can show "an established relationship with, or connection to, the victim such that the sole connection with the victim was not the commission of the crime." RCW 9.94A.670(2)(e).

Several witnesses also testified to the relationship between MB and Pratt. Pratt's aunt said MB met Pratt but she did not know when. She added that she saw Pratt often because he always received invitations to parties. However, she did not know if Pratt and MB had "really talked to each other ever." 1 VRP (Oct. 2 2017) at 54. Pratt's aunt told the court that MB's parents may have said "hi and bye" to Pratt but otherwise she did not think they ever had a conversation with each other. 1 VRP (Oct. 2 2017) at 54.

MB's mother testified that she did not know Pratt, never interacted with him, never had a conversation with him, and never met him. And, she further stated that they had never been at a gathering at the same time, and that Pratt had never met her husband. MB's father also testified that he had never had any interaction with Pratt and that neither he nor MB had ever met or spoken to Pratt.

Pratt testified that he remembered meeting MB's parents at a specific party before the alleged incident, although he did not remember meeting MB before the sleepover. He also testified that he knew MB's first name but not her last.

The trial court concluded that Pratt established a relationship with MB sufficient to satisfy the statute and sentenced Pratt to a SSOSA. The State appealed Pratt's sentence.

We reversed the trial court, concluding that Pratt was ineligible for SSOSA because he did not have an established relationship with, or connection to, MB. *Pratt*, 11 Wn. App. 2d at 462. Our Supreme Court affirmed our decision and remanded to the trial court for resentencing. *Pratt*, 196 Wn.2d at 851.

## II. RESENTENCING, ADDITIONAL EVIDENCE, AND CONFINEMENT

The trial court held a resentencing hearing and took evidence to determine whether Pratt had a connection or relationship with MB. At the hearing, Pratt presented testimony from three witnesses to establish his relationship with MB: Troy Howington, Pamela Howington, and himself.

Troy Howington, Pratt's uncle, testified that Pratt and MB had both been present at family functions around 2006 and 2007.[2] He testified that Pratt had been to MB's parents' house at least twice for family events. He also recalled that Pratt and MB were both present during family events, weddings, Fourth of July celebrations, spring break, Thanksgiving, and birthday parties. Some of these events took place at MB's grandmother's house.

Pamela Howington, MB's grandmother and Troy Howington's mother, testified that Pratt, MB, and MB's parents attended many family gatherings together on at least three occasions. And Pratt testified that he knew MB's grandmother and her parents. None of the witnesses testified as to conversations between Pratt and MB, or any other interaction between the two prior to the incident.

The trial court did not enter written findings of fact, but stated that the relationship between MB and Pratt was that of "mere acquaintance[s]," and that they have had "brief passings." 1 VRP (Apr. 6, 2021) at 53. Thus, it concluded that Pratt was ineligible for SSOSA, and it imposed an indeterminate life sentence with a standard range minimum sentence of 57 months.

---

[2] MB was one year old in 2006.

Prior to the verdict in 2016, Pratt was in jail for 2 days before posting bail. After the verdict in 2017, Pratt was taken into custody and his request for bail pending appeal was denied. Pratt served one year in jail, then remained on community custody up until his resentencing hearing. At the resentencing hearing, Pratt argued that he should receive credit for time served to include not only the time he spent in jail, but the time he spent on community custody, for a total of 1,276 days.

Although the trial court stated that Pratt should not receive credit for time served on community custody, the court did not calculate credit for time served on the judgment and sentence. The court ultimately asked the prosecutor if he wanted the court to strike the 361 days credit for times served and "just have [Department of corrections] calculate?" 1 VRP (Apr. 6, 2021) at 82. Both the prosecutor and Pratt's counsel agreed. The judgment and sentence reads:

> (d) **Credit for Time Served:** The defendant shall receive credit for eligible time served prior to sentencing if that confinement was solely under this cause number. RCW 9.94A.505. The jail shall compute time served.

Clerk's Papers (Mar. 28, 2018) at 104.

Pratt appeals his sentence.

## ANALYSIS

### I. SSOSA ELIGIBILITY

Pratt argues that the trial court erred in finding him ineligible for SSOSA. We disagree.

Once a defendant has been convicted of a sex offense, the trial court has the discretion to impose a SSOSA sentence if he meets the statutory criteria. *Pratt*, 196 Wn.2d at 862; RCW 9.94A.670. A defendant is eligible for SSOSA if he can show "an established relationship with, or connection to, the victim such that the sole connection with the victim was not the

commission of the crime." RCW 9.94A.670(2)(e). An established relationship or connection requires that the defendant and victim have "a direct connection between one another, rather than mere acquaintances who happen to share any number of overlapping colleagues, friends, or relatives." *Pratt*, 196 Wn.2d at 858.

This is because SSOSA's purpose is to apply in "circumstances where a victim would be reluctant to report abuse and unwilling to participate in prosecution without the promise of a shortened sentence and treatment for an offender." *Pratt*, 196 Wn.2d at 857-58. Thus, "SSOSA is limited to circumstances in which abuse is likely to go underreported, such as where an abuser has a protective, caretaking, or intimate association with their victim." *Pratt*, 196 Wn.2d at 858. SSOSA eligibility is a question of law we review de novo. *State v. Landsiedel*, 165 Wn. App. 886, 889, 269 P.3d 347 (2012).

Here, our Supreme Court concluded that Pratt did not have the required relationship or connection with MB so as to make him eligible for SSOSA. *Pratt*, 196 Wn.2d at 858-59. Nothing in the additional evidence adduced at the resentencing hearing changes this conclusion. MB told an investigator that she had never met Pratt or his daughter until the day of the incident nor has she ever had a conversation with him. Witnesses testified that Pratt and MB attended multiple events and gatherings together, but none of them testified as to any sort of relationship or direct connection between MB and Pratt. Pratt knew MB's parents and had been to MB's grandmother's house on a few occasions. None of the testimony established that MB and Pratt were more than acquaintances who happen to share overlapping friends and relatives. The evidence introduced simply reaffirmed that Pratt and MB have nothing more than family in

6

common and brief passings.[3]  Thus, Pratt is ineligible for a SSOSA sentence because he failed to establish a connection or relationship with MB.

## II. EQUAL PROTECTION

Pratt argues that the SSOSA eligibility requirement for an "established relationship with, or connection to," the victim violates the equal protection clause.  Br. of Appellant at 13.  We disagree.

Under the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  Article I, section 12 of the Washington Constitution states: "[n]o law shall be passed granting to any citizen, class of citizens . . . privileges or immunities which upon the same terms shall not equally belong to all citizens."

The first step to an equal protection analysis requires the party challenging the legislation to identify that he is a member of a cognizable class, and that he received disparate treatment because of his membership in that class.  *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006).

The second step is determining which standard of review applies.  *Osman*, 157 Wn.2d at 484.  The standard of review depends on the type of classification or right implicated.  *State v. Smith*, 117 Wn.2d 263, 277, 814 P.2d 652 (1991).  If the state action does not threaten a

---

[3] Pratt misinterprets the requirement of a relationship or connection with the victim to include only "protective, caretaking, or intimate associations" relationships with the victim.  Br. of Appellant at 12.  He argues that the requirement may deprive an extended family member from the benefits of SSOSA.  Yet, our Supreme Court provided such relationships as examples of typically close relationships where abuse may go unreported, not as an exhaustive list of which relationships qualify.  *Pratt*, 196 Wn.2d at 858.  Instead, our Supreme Court's analysis relied on whether the victim had a direct relationship with the abuser.  *Pratt*, 196 Wn.2d at 858.

fundamental right, or if the individual is not a member of a suspect or quasi-suspect class,[4] courts apply a rational basis test. *Osman*, 157 Wn.2d at 484.

Legislation withstands rational basis if the law is rationally related to a legitimate government interest. *Seeley v. State*, 132 Wn.2d 776, 795, 940 P.2d 604 (1997). Legislative acts are presumed constitutional and we will not find otherwise unless the defendant proves so beyond a reasonable doubt. *Seeley*, 132 Wn.2d at 795. "The rational basis test requires only that the means employed by the statute be rationally related to legitimate state goals, and not that the means be the best way of achieving that goal." *Seeley*, 132 Wn.2d at 795.

Although Pratt fails to establish a cognizable class, he belongs to the class of persons convicted of a sexual offense without having an established relationship or connection to the victim. Because this is neither a suspect nor quasi-suspect class, and the legislation does not implicate a fundamental right, we apply rational basis review. *Seeley*, 132 Wn.2d at 795.

Here, RCW 9.94A.670(2)(e) excludes defendants without an established relationship to the victim because the purpose of SSOSA is to encourage victims who would be reluctant to report abuse and unwilling to participate without the promise of a lenient sentence and treatment for the offender. *Pratt*, 196 Wn.2d at 857-58. Thus, SSOSA was designed to incentivize the reporting of abusers despite these close relationships. H.B. REP. ON ENGROSSED SUBSTITUTE H.B. 2400, at 8, 58th Leg., Reg. Sess. (Wash. 2004).

---

[4] Suspect classifications are race, alienage, and national origin. *Am. Legion Post #149 v. Dep't of Health*, 164 Wn.2d 570, 608, 192 P.3d 306 (2008). And, quasi-suspect classifications are those based on gender or illegitimacy. *City of Richland v. Michel*, 89 Wn. App. 764, 771, 950 P.2d 10 (1998).

The legislation's requirement that the defendant have an established relationship with the victim is rationally related to a legitimate governmental interest—prosecuting and properly treating those who commit sex crimes. Without such a requirement, many sex crimes may go unreported. Thus, the legislation is constitutional because it is rationally related to a legitimate governmental interest.[5]

### III. CREDIT FOR TIME SERVED

Pratt argues that under RCW 9.95.062(3), he is entitled to credit toward confinement for time served on community custody. He argues that the term "imprisoned" in RCW 9.95.062(3) is ambiguous and, under the rule of lenity, must include lesser forms of restraint, including community custody. We disagree.

This case presents a unique question: Whether a defendant who was on community custody under a SSOSA while his case was on appeal is entitled to credit for time served on community custody after his SSOSA sentence is reversed. The parties dispute the meaning of the term "imprisonment," which is not defined in the relevant statute. Resolution of this issue is a matter of statutory interpretation.

We review questions of statutory interpretation de novo. *State v. Gray*, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). The fundamental objective of statutory interpretation is to ascertain and carry out the legislature's intent. *Gray*, 174 Wn.2d at 926. Statutory interpretation begins

---

[5] This conclusion is further bolstered by our unpublished cases holding that RCW 9.94A.670(2)(e) does not violate equal protection. *See e.g., In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 74, 469 P.3d 322 (2020) (unpublished portion) (holding that the legislature had a rational basis for enacting RCW 9.94A.670(2)(e)); *State v. Vance*, 9 Wn. App. 2d 357, 367, 444 P.3d 1214 (2019) (unpublished portion) (holding that RCW 9.94A.670(2)(e) survives rational basis review).

with the statute's plain meaning. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). We discern plain meaning "from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

If a statute's meaning is plain on its face, we give effect to that plain meaning. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). Only if statutory language is ambiguous do we resort to aids of construction, including legislative history. *State v. Armendariz*, 160 Wn.2d 106, 110-11, 156 P.3d 201 (2007). A provision is ambiguous if it is subject to more than one reasonable interpretation. *Engel*, 166 Wn.2d at 579. If the statute is ambiguous, the rule of lenity requires courts to interpret the statute in favor of the defendant absent legislative intent to the contrary. *State v. Jacobs*, 154 Wn.2d 596, 600-01, 115 P.3d 281 (2005).

The statute Pratt relies on, RCW 9.95.062(3), provides

> In case the defendant has been convicted of a felony, and has been unable to obtain release pending the appeal by posting an appeal bond, cash, adequate security, release on personal recognizance, or any other conditions imposed by the court, *the time the defendant has been imprisoned* pending the appeal shall be deducted from the term for which the defendant was sentenced, if the judgment is affirmed.

(Emphasis added).

And, RCW 9.94A.505(6) provides "[t]he sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced."

Our courts have interpreted the SSOSA statutes to determine that the legislature did not intend a defendant to receive credit for time served on SSOSA community custody against a later imposed prison sentence.

In *State v. Gartrell*, 138 Wn. App. 787, 791, 158 P.3d 636 (2007), Division I of this court held that the SSOSA statute does not provide that community custody time must be credited where a suspended sentence is revoked. *Gartrell* noted that the SSOSA statute itself, RCW 9.94A.670(5), differentiates between "confinement" and "community custody," noting that courts are required to impose a "term of confinement" as well as "community custody." *Gartrell*, 138 Wn. App. at 790-91.

In *State v. Miller*, 159 Wn. App. 911, 925-26, 247 P.3d 457 (2011), Division I of this court determined that community custody served during a SSOSA has a different purpose than community custody served after incarceration. After considering the policy purposes behind the two forms of community custody, the court held that "it is apparent that the legislature did not intend for the two to be comingled." *Miller*, 159 Wn. App. at 927. Moreover, the express language of the SSOSA statute, RCW 9.94A.670(11),[6] shows that the legislature did not intend for a defendant to be credited for time served in community custody as part of a suspended sentence. *Miller*, 159 Wn. App. at 927.

In *State v. Pannell*, 173 Wn.2d 222, 232, 267 P.3d 349 (2011), our Supreme Court followed the rationale of *Miller* to hold that the legislature did not intent the period a defendant serves on SSOSA community custody to be considered in calculating his maximum sentence. And, in *State v. Anderson*, 132 Wn.2d 203, 208, 937 P.2d 581 (1997), our Supreme Court considered an argument similar to Pratt's to conclude that "imprisoned" was not interchangeable with "confinement" as defined in RCW 9.94A.030(8). It determined that because Anderson had

---

[6] RCW 9.94A.670(11) provides: "All confinement time served during the period of community custody shall be credited to the offender if the suspended sentence is revoked."

been released on bond and was subject to electronic home monitoring, he was not statutorily entitled to jail time credit. *Anderson*, 132 Wn.2d at 208.

Thus, a plain reading of the statute and related provisions reveals legislative intent not to credit a defendant for his time in community custody during SSOSA, and we hold that Pratt is not entitled to credit for time served on community custody.

Pratt cites to *State v. Slattum*, 173 Wn. App. 640, 651, 295 P.3d 788 (2013) to support his argument that "imprisoned" as defined in RCW 9.95.062(3), is ambiguous and that, under the rule of lenity, it must include SSOSA community custody. But *Slattum* is distinguishable.

In *Slattum*, Division I of this court interpreted RCW 10.73.170, the statute regarding post-conviction DNA analysis, to determine whether a defendant who was on community custody after serving a sentence of incarceration could petition for post-conviction DNA analysis. 173 Wn. App. at 643. RCW 10.73.170(1) states, "[a] person convicted of a felony in a Washington state court who currently is serving a *term of imprisonment* may submit to the court that entered the judgment of conviction a verified written motion requesting DNA testing." (emphasis added). The *Slattum* court held that "imprisonment," as used in RCW 10.73.170, was ambiguous and applied the rule of lenity to allow Slattum to petition for post-conviction DNA analysis. *Slattum*, 173 Wn. App. at 657-58. The court held that "term of imprisonment" included community custody that was being served after a defendant was released from prison. *Slattum*, 173 Wn. App. at 658.

*Slattum* is distinguishable for two reasons. First, as explained in *Miller*, the purpose of the SSOSA community custody and community custody after release by the Indeterminate Sentence Review Board differ, and there is no reason why the two statutes should be interpreted

in the same way. The legislature had different goals in creating the type of community custody under SSOSA and the type of community custody that would follow incarceration. *Miller*, 159 Wn. App. at 926.

Second, the *Slattum* court distinguished the term "imprisonment" as contained in RCW 9.95.062(3) because that statute contained "qualifying language," which RCW 10.73.170 did not. *Slattum*, 173 Wn. App. at 652. The statutes serve different purposes, and the language of both statutes differs. Thus, *Slattum* is distinguishable and does not inform our interpretation of RCW 9.95.062(3).

Pratt argues that because the term "imprisoned" is ambiguous, the rule of lenity mandates he be given credit for time served on community custody. However, even if RCW 9.95.062(3) is ambiguous, the rule of lenity requires courts to interpret the statute in favor of the defendant only if there is no legislative intent to the contrary. *Jacobs*, 154 Wn.2d at 600-01. Here, the legislative intent is to the contrary. The legislature clearly intended the community custody served on SSOSA to not be credited for time served against a sentence if the SSOSA is revoked for any purpose. *See e.g., Pannell*, 173 Wn.2d at 232; *Miller*, 159 Wn. App. at 927. Thus, Pratt's argument fails.[7]

---

[7] The State argues that Pratt is not entitled to credit for time served under RCW 9.94A.505(6) which states, "[t]he sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced." But RCW 9.94A.505(6) does not resolve this issue. RCW 9.94A.505(6) should be read in conjunction with RCW 9.95.062(3), and a trial court should give credit for time served according to the time he was "in confinement" under RCW 9.94A.505(6), and the time he was "imprisoned" pending appeal under RCW 9.95.062(3). *See Engel*, 166 Wn.2d at 578 (a court may examine related provisions and the statutory scheme as part of its plain meaning analysis). Therefore, this argument is not dispositive.

No. 55721-5-II

Pratt is not entitled to credit for time served in community custody because the SSOSA statute and related provisions show that the legislature did not intend to credit a defendant for his time in community custody during SSOSA.

CONCLUSION

In conclusion, Pratt is not subject to SSOSA because he failed to establish a relationship or connection with MB, and the statutory requirement of a relationship or connection with the victim does not violate equal protection. Pratt is not entitled to credit for time served in community custody. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Glasgow, C.J.

Price, J.

14